for the synagogue and 29 spaces would be required for the child care facility for a total of a minimum of 105 required spaces to accommodate the proposed development. The Congregation proposed to meet the parking requirements by providing 71 parking spaces on site and the remainder under a shared parking agreement with a religious school to the north of the Congregation.

Under Section 19.3.6.1 (A),(B)2 and(B)3 of the Zoning Ordinance, shared parking may be approved via an Administrative Permit in the O-I, C-1, C-2, MIX, M-1, M-1A and M-2 zoning districts, provided no more than 20 percent of the total parking requirement may be provided off-site; and the property must be located no more than 300 feet from the principal use with pedestrian access provided between the sites, as may be required by the Department of Community Development.

The Congregation's property is not zoned to any of the zoning districts, which allow shared parking; the synagogue is located 1,056 feet from the school site; and thirty-two (32%) percent of the total parking requirement for the Congregation is provided off-site. The Congregation did not meet the requirements for shared parking under § 19.3.6 and should have been required to obtain a variance. However, the City approved the Congregation's application without a variance and in contravention of the Zoning Ordinance § 19.3.6.

In failing to require the Congregation to obtain a variance from the requirements of Section 19.3.6.1 (A),(B)2 and(B)3 of the Zoning Ordinance and by approving the Congregation's use permit and concurrent variance petition, notwithstanding the Congregation's failure to comply with the requirements of the Zoning Ordinance, the City Council gave favorable treatment to the Congregation.

### 3. Zainabia Islamic Education Center

On October 8, 2009, the City approved a variance to reduce the parking requirement for the Zainabia Islamic Education Center from 57 to 42 on-site spaces, a 26% reduction. The Sandy Springs Board of Appeals approved four (4) additional primary variances from the Zoning Ordinance to allow for the reconfiguration and expansion of an existing nonconforming parking lot. The Staff noted in its analysis of the Zainabia variance application that:

> parking requirements for a church are calculated by one (1) space for every 30 square feet located in the largest assembly area without fixed seats. The largest assembly area is 1,700 square feet located in the existing congregation hall. The site would require fifty-seven (57) spaces. The applicant is proposing forty-two (42) spaces.

The Staff also noted that the Zainabia Islamic Center "has been located on the site for twelve (12) years with twenty parking spaces without a parking problem. Therefore, staff is of the opinion this criteria has been satisfied."

However, in the case of the Church of Scientology, Staff ignored actual levels of parking usage shown by the Parking Study in Nashville and in Buffalo. Instead, the City held the Church of Scientology to an excessive and arbitrary parking standard.

4. **Kadampa Meditation Center**

The City approved the rezoning of the Kadampa Meditation Center property to allow a place of worship having accessory uses and to a boarding house, conditioned on providing in accordance with the Zoning Ordinance and on the owner's agreement that "[t]here shall be no parking in surrounding neighborhoods and office developments without written agreements."

In the case of the Church of Scientology, the Director maintained that parking in the neighborhood may or may not occur but potentially could be a problem. However, the City did not consider a limit on parking in the neighborhood as a viable mitigation measure for overflow parking as it did for Kadampa.

The Director also considered the "the inability of people to park on the site and to back up traffic on the road because they could not get in and out of the site because there is insufficient parking" as a public safety issue. When asked if it were possible to alleviate that problem by putting someone at the entrance that would prohibit cars from going in if the lot were full, the Director acknowledged "[that] would be another option." When asked if putting a sign out that said "lot full" was another way to keep cars from backing up, the Director replied "it's a possible way to do it if someone is willing to do that during periods of operation of the facility." The Director admitted that the City never suggested either alternate and further stated that it was not the City's "obligation to prepare an application for an applicant."

## II. STANDARD ON MOTION FOR SUMMARY JUDGMENT

The summary judgment procedure is a method for promptly disposing of claims or actions in which there is no genuine issue as to any material fact or in which only a question of law is involved. Georgia Court Rules and Procedure: Key Rules Volume IIA - Federal 2010, p. 150. Under Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment or partial summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is

sought." Fed. R. Civ. P. 56 (a). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c)(2). See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

Even "[i]f summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue . . . "[and] issue an order specifying what facts--including items of damages or other relief--are not genuinely at issue." Id. at (d)(1). The court may issue an interlocutory summary judgment "on liability alone, even if there is a genuine issue on the amount of damages." Id. at (d)(2).

### III. ARGUMENT AND CITATION OF AUTHORITY

A.  The Zoning Decision Is a Land Use Regulation, Which Discriminates Against the Church of Scientology.

The right to assemble for worship is at the very core of the free exercise of religion. Churches, synagogues and other places of worship cannot function without physical space adequate to meet their needs and consistent with their theological requirements. The right to build, buy, or rent such a space is an indispensable adjunct of the core First Amendment

right to assemble for religious purposes. This right is protected by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which provides that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). RLUIPA broadly defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief," including "[t]he use, building, or conversion of real property for the purpose of religious exercise." 42 U.S.C. § 2000cc-5(7)(A).

Sections (b)1 and (b)2 of RLUIPA are intended to "enforce the Free Exercise Clause rule against laws that burden religion and are not neutral and generally applicable." H.R. Rep. No. 106-219 at 7 n.9 (1999)(quoted in Midrash Shepardi v. Town of Surfside, 366 F.3d 1214, 1231 (11th Cir. 2004). A violation of Section(b)'s discrimination provisions must undergo strict scrutiny; i.e., it must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest. Id. at 366 F.3d at 1235.

Evidence of discriminatory implementation of an ordinance will support a claim of violation of the nondiscrimination provision. Larson v. Valente, 456 U.S. 228(1982)(clearest

command of Establishment Clause is that one religious denomination cannot be officially preferred over another); Fowler v. State of Rhode Island, 345 U.S. 67, 69-70 (1953)(ordinance, which provided that no person should address any political or religious meeting in any public park, but which did not prohibit church services in park, as construed and applied to prohibit minister of Jehovah's Witnesses from addressing religious meeting of Witnesses and their guests in public park, violated First Amendment to Federal Constitution). See e.g., Adhi Parasakthi Charitable, Medical, Educational, and Cultural Society of North America, v. Township of West Pikeland,---F. Supp. 2d---,2010 WL 2635979 (allegation that Township nondiscrimination provision violated RLUIPA by giving favorable treatment to Christian group).

The failure and refusal to apply the Sandy Springs Zoning Ordinance to the Church's zoning request violates the Church of Scientology's rights of free exercise under section (b)(2) of RLUIPA. The City has discriminated against the Church, not only by refusing to apply its own parking ordinance to the Church, but also by applying a different parking standard than it has applied to every other church or place of worship in its jurisdictional boundaries. The City approved parking variances to reduce the parking required for other places of worship in

the City, while imposing a parking requirement on the Church of Scientology that amounts to almost three (3) times the parking required by the City's Zoning Ordinance. Therefore, the City has the burden to show that its discriminatory action is justified by a compelling governmental interest and must be narrowly tailored to advance that interest. Midrash, 366 F.3d at 1235.

The City claims that it has a compelling interest in ensuring citizens' safety through parking regulations. However, parking issues, per se, have not been embraced by the courts as compelling. See e.g., Lighthouse Cmty. Church of God v. City of Southfield, 2007 WL 30280 at 9 (E.D. Mich. Jan. 3, 2007). Moreover, the Church of Scientology proposed to provide substantially more parking for the 43,916 square foot building than the Zoning Ordinance requires. The parking studies, requested by the City and performed by Kimley-Horn, prove that parking proposed by the Church would be more than sufficient to meet its needs.

Other churches and places of worship were treated favorably in the application of the Zoning Ordinance to their churches, despite deficiencies in meeting the City's parking requirements. Or, as the case in the Apostles Church, a strained interpretation of the Zoning Ordinance was employed to reduce

the number of required spaces. Yet, in the instant case, the City labored to impose a parking requirement contrary to the City's Zoning Ordinance, and not supported by any evidence as shown by the numerous ways the Staff calculated parking for the Church. The record is simply devoid of evidence that supports parking as a compelling interest sufficient to limit the requested density of the Church building.

By the same token, even if parking were a compelling government interest, the City's action is not narrowly tailored to achieve the expressed compelling interest in having sufficient parking. As shown above, the City had the opportunity to approve the application for a 43,916 square foot building, subject to conditions addressing the public interest. In fact, the City admits that alternate solutions existed, including the Alternate Conditions proposed by the Church and incorporated into the Staff's recommendations, which address the Staff's concerns regarding the proposed use. By definition, the alternate solutions, which the City's professional staff approved, constitute a less restrictive means for the City to further its interest. Where such a less restrictive means exists, the statute requires that the City use such means rather than unnecessarily burden the Church's free exercise of its religion. Accordingly, the Church of Scientology is entitled to

partial summary judgment that the City's Zoning Decision violates RLUIPA Section (b)(2).

B. **The Zoning Decision Violates the Limitations and Exclusions Provision of RLUIPA.**

The City has deprived and continues to deprive the Church of its right to free exercise of religion as secured by the RLUIPA, 42 U.S.C. § 2000cc (b)(3) by imposing and implementing a land use regulation that unreasonably limits religious assemblies, institutions and structures within the City.

A church is a permitted use in the City in the O-I zoning district. By refusing to allow the Church to use its building as requested, the City has limited the ability of the Church to practice its religion in accordance with the doctrine of Scientology. As discussed above, the City cannot show a compelling government interest in limiting the Church's use of the building and the City's actions are not narrowly tailored to further that interest. Therefore, summary judgment should be entered against the City for violation of Section (b)(3) for its unreasonable limitation of religious assembly by the Church of Scientology in the City.

The City had no constitutionally reasonable basis for its refusal to approve the Application as requested or its failure to apply Section 18.2.1 of the Zoning Ordinance, as it pertains

to parking requirements for "Churches and other places of worship," to the Church of Scientology, as it had done for all other churches in the past. Accordingly, the Church is entitled to issuance of a preliminary and permanent injunction enjoining Defendants from enforcing any limitation upon the Church's use of the entire 43,916 square foot building for religious uses, and requiring the City to take whatever actions necessary to permit the Church to undertake such use. See <u>Rocky Mountain Christian Church v. Board of County Comm'rs. of Boulder County, Colo.</u>, 613 F.3d 1229 (10th Cir. 2010)

C.  **The Zoning Decision Violates the Church of Scientology's Right to Free Exercise Under the First Amendment.**

The Free Exercise Clause of the First Amendment provides that "Congress shall make no law ... prohibiting the free exercise" of religion." U.S. Const. amend. I. The Free Exercise Clause, which has been applied to the states through the Fourteenth Amendment, "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." <u>Cutter v. Wilkinson</u>, 544 U.S. 709, 719 (2005)("Section 3 of RLUIPA, on its face, qualifies as a permissible accommodation that is not barred by the Establishment Clause) (quoting <u>Board of Education of Kiryas Joel Village School District v. Louis Grumet, et al.</u>, 512 U.S. 687

(1994); and <u>Committee for Public Ed. & Religious Liberty v. Nyquist</u>, 413 U.S. 756, 792-793, (1973))

The appropriate standard of review for analyzing claims under the First Amendment's Free Exercise Clause depends upon the facts of the particular case. A strict scrutiny standard of review is appropriate in situations that involve "individualized governmental assessment[s]." <u>Cottonwood Christian Center v. Cypress Redevelopment Agency</u>, 218 F.Supp.2d 1203, 1222-1241 (C.D. Cal. 2002). A strict scrutiny analysis is also appropriate where "[g]overnment enforcement of laws or policies ... substantially burden the exercise of sincerely held religious beliefs." <u>Fifth Ave. Presbyterian Church v. City of New York</u>, 293 F.3d at 574 (2d Cir. 2000)(citing <u>Church of Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 546 (1993) and <u>Sherbert v. Verner</u>, 374 U.S. 398, 402-03 (1963)).

Here, the strict scrutiny analysis is appropriate. The City does not dispute that the City's treatment of the Church's zoning application constitutes an "individualized governmental assessment." The Church has shown that the Zoning Decision is discriminatory and inhibits the Church of Scientology's right to free exercise of its religion.

Under a strict scrutiny analysis, "a law restrictive of religious practice must advance interests of the highest order and must be narrowly tailored in pursuit of those interests." Fifth Ave. Presbyterian Church, 293 F.3d at 574 (citing Church of the Lukumi Babalu Aye, 508 U.S. at 546 (internal quotations omitted)). This test is the same as the one the Court would conduct under Sections 2(b)(2)and (3) of RLUIPA. Thus, under the undisputed facts in this case, the Church is entitled to summary judgement that the City's discriminatory treatment of the Church was neither justified by a compelling governmental interest, nor narrowly tailored in pursuit of those interests and violates the First Amendment Free Exercise Clause.

D.  **The Church of Scientology Is Entitled to Summary Judgment that the Zoning Decision Violates Subsection (a) of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc.**

Subsection (a) of RLUIPA forbids a government agency to "impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution (A) is in furtherance of a compelling governmental interest; and (B) is the least

152354.8                            33

restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). It is undisputed that the City has imposed a land use regulation, the Zoning Decision, on the Property.

### 1. Substantial Burden on Religious Exercise

The Eleventh Circuit has defined "substantial burden" as placing more than an "inconvenience" on religious exercise. Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (2004). The court noted that "a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct." Id.

A substantial burden claim may be established "where land use restrictions are imposed on the religious institution arbitrarily, capriciously, or unlawfully." Westchester Day School v. Village of Mamoraneck (Westchester VII), 504 F.3d 338, 348, 350 (2d Cir. 2007); see also Sts. Constantine and Helen v. City of New Berlin, 396 F.3d 895, 899-901 (7th Cir. 2005) (substantial burden demonstrated where "decision maker cannot justify" challenged ruling); Guru Nanak Sikh Society v. County of Sutter, 456 F.3d 978, 989-91 (9th Cir.2006) (substantial burden demonstrated where government officials "inconsistently applied" specific policies and disregarded relevant findings "without explanation").

152354.8                                    34

The plaintiffs in <u>Midrash</u> were two (2) synagogues (the "Congregations"), which held services in rented space in the Town of Surfside's business district, which did not allow churches or places of worship. Religious assemblies were allowed in the RD-1 district. The Congregations argued, among other things, that requiring them to locate their synagogues in the RD-1 district constituted a substantial burden on religious exercise because relocation would require their congregants to walk farther and would greatly burden congregants, who are ill, young or very old. The Eleventh Circuit declined to find that the Congregations met the substantial burden requirement of section (a) because the Congregation did not show that the inability to locate in the business district was more than an inconvenience.

The facts regarding substantial burden in <u>Midrash</u> are readily distinguished from the instant case: the Church of Scientology owns the Property at issue; the Congregations merely leased space. Second, the Church of Scientology meets every objective requirement of the Sandy Springs Zoning Ordinance, including the parking requirements. The Sandy Springs Property is located in a district, which allows a church or place of worship as a permitted use; the district in which the Congregations rented space did not allow churches or places of

worship. The use of the Sandy Springs Property as a place of worship is consistent with the Sandy Springs Comprehensive Plan designation. The comprehensive plan for the Town of Surfside, on the other hand, encouraged development of commercial office commercial uses in the area.

The Church of Scientology went through an exhaustive study of all its theological requirements for space to determine the "Ideal Organization" or structure that each of its churches should have to properly practice the religion of Scientology. The Church provided extensive information to the City indicating the necessity of having use of the entire building in order to meet its religious needs. The Church simply can not meet these needs with the 32,053 square foot limitation on the building.

The inability to utilize the entire 43,916 square feet of the existing building owned by the Church of Scientology is far more than an inconvenience. The Church proposes locating the chapel in the basement of the building because the existing building is not engineered and constructed to allow a concentrated assembly of people on any other floor of the building. Denying the Church the ability to utilize the basement would require the Church to revise its existing renovations plans (civil plans have been completed) and re-

engineer the structural support of the building, which would be prohibitively expensive.

Also, restricting the Church's ability to use the whole building would severely compromise the religious programs the Church can offer its congregants. Thus, adherents to the Scientology religion would be deprived of the opportunity to fully practice their religion.

If the Church were unable to use the 43,916 square foot building, it would have to sell the Property and relocate. Even assuming the Church were able to find a property of suitable size and location, there will be delay, uncertainty, and a great deal of expense. The Church also would have to dispose of the Property, which would result in a significant loss. See Sts. Constantine and Helen Greek Orthodox Church, Inc. v. City of New Berlin, 396 F.3d at 901. (that the burden may not be insuperable, does not make it insubstantial). The burden here is substantial.

2.  Least Restrictive Means of Furthering a Compelling Government Interest.

Once a religious institution has demonstrated that its religious exercise has been substantially burdened, the burden of proof shifts to the municipality to prove it acted in furtherance of a compelling governmental interest and that its

action is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-2(b). Compelling state interests are "interests of the highest order." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. at 546.

As discussed above in Sections A and B herein, the City's parking concerns do not rise to the level of a compelling governmental interest; nor did the City use the least restrictive means necessary to further that interest. Therefore, the Church is entitled to summary judgment on its claim under RLUIPA Section (a)(1).

E. **The Church of Scientology Is Entitled to Compensatory Damages Under 42 U.S.C. § 1983.**

If the court finds that the City has discriminated against the Church of Scientology in violation of the First Amendment, the Church will be entitled to compensatory damages under 42 U.S.C. § 1983. "[T]he basic purpose of § 1983 damages is to compensate persons for injuries that are caused by the deprivation of constitutional rights." Fortress Bible Church v. Town of Greenburgh, - - - F. Supp. 2d - - -, 2010 WL 3199876 (S.D.N.Y.)(citing Memphis Community School District v. Stachura, 477 U.S. 299, 307 (1986)).

The Church's damages include the following: (i) increased construction costs incurred as a result of delays; (ii) loss on the sale of the building; (iii) increased architectural and engineering costs incurred as a result of delays; (iv) increased operating expenses resulting from the City's refusal to allow the Church of Scientology to use its building as requested (v) consultants' fees incurred as a result of the City's refusal to follow its Zoning Ordinance regulating parking spaces; and (vi) attorneys' fees and other costs available under 42 U.S.C. § 1988 incurred as a result of this litigation.  The Church of Scientology will submit a request for any compensation to which it believes it is entitled and documentation supporting the same upon entry of this Court's Order finding a compensable violation of federal law by the City.

CONCLUSION

WHEREFORE the Church of Scientology respectfully requests that the Court grant its Motion for Partial Summary Judgment for the reasons set forth herein.

Respectfully submitted,

DILLARD & GALLOWAY, LLC

By: G. Douglas Dillard
Georgia Bar No. 221900
dougd@dandglaw.com
Andrea Cantrell Jones
Georgia Bar No. 398440
andrea@dandglaw.com
Lauren M. Hansford
Georgia Bar No. 497507
lhansford@dandglaw.com
Attorney for Plaintiff
3500 Lenox Road, N.E., Suite 760
Atlanta, Georgia 30326
(404) 965-3680
(404) 965-3670 (fax)