EXHIBIT "D"

JUNE 2, 2010

DEPOSITION TRANSCRIPT OF NANCY LEATHERS

PAGES 23-28

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHURCH OF SCIENTOLOGY OF )
GEORGIA, INC., a Georgia )
Corp., )
            )
    Plaintiff, )
            ) CIVIL ACTION
    vs. )
            ) FILE NO. 1:10-CV0082CAP
CITY OF SANDY SPRINGS, )
GEORGIA, ET AL., )
            )
    Defendants. )

- - -

Deposition of NANCY J. LEATHERS, AICP, taken on behalf of the Plaintiff, pursuant to agreement of counsel, in accordance with the Federal Rules of Civil Procedure, before Cathey H. Sutton, Certified Court Reporter, at 7840 Roswell Road, Building 500, Sandy Springs, Georgia on the 2nd day of June, 2010, commencing at the hour of 10:03 a.m.

- - -

Deb Puckett & Associates

636 Old Ivy Road

Atlanta, Georgia  30342

(404) 365-9015

22

1  in a written form; and you were the person who
2  verified the interrogatory responses.  Did you
3  actually review and supply the information for the
4  interrogatory responses?
5      A   Well, the department provided the, the
6  information, and I believe probably both Patrice and
7  I reviewed it.
8      Q   You don't remember specifically reviewing
9  your interrogatory, the City's interrogatory
10 responses?
11     A   Oh, I'm, I know that I did.  I don't, I
12 don't remember precisely now.
13     Q   Well, you said probably.  I thought
14 well --
15     A   No.  Probably was I thought that Patrice
16 had reviewed it as well.
17     Q   In your interrogatory responses you, in
18 the interrogatories you were asked to state with
19 specificity the compelling governmental interest you
20 contend justifies denial of the Church of
21 Scientology application as requested.  And the
22 denial being that less density --
23     A   I, I --
24     Q   -- was recommended.
25     A   -- I wouldn't view it as a denial.  I,

1  this is an approval with conditions.
2      Q   Okay.  But it was denied as requested
3  because they requested forty-three thousand some odd
4  square feet, and they only got thirty-two.
5      A   Well, I don't, that's not a denial.  A
6  denial would be to recommend denial of the case,
7  and, and this was not that.  This was a
8  recommendation to approve it at a density we thought
9  was appropriate for the site.
10     Q   I'm not going to quibble with you about
11 the semantics of this, but basically I'm asking you
12 what the compelling governmental interest, what
13 compelling governmental interest was served by
14 recommending 32,053 square feet as opposed to the
15 square feet requested by the Church of Scientology?
16         MS. HENDERSON:  I'm going to object, but
17     you can answer.
18         THE WITNESS:  Okay.  The, the issue that I
19     was unable to, to address was the issue of
20     sufficient parking for the larger square
21     footage.  We worked very hard to find a
22     solution to that, and I was unable to do that.
23     Q   (BY MS. JONES)  Let me give you the
24 question again.  I'm asking you what compelling
25 governmental interest was served by the

23

1  recommendation for 32,000 square feet.
2      A   Insufficient parking creates a public
3  safety issue related to the site, and that is the
4  public interest that, that was involved.
5      Q   Do you understand what the term compelling
6  governmental interest means as a matter of law?
7          MS. HENDERSON:  Objection.
8          THE WITNESS:  No.  I'm not a lawyer.
9      Q   (BY MS. JONES)  Did your lawyer explain to
10 you what a compelling governmental interest is?
11     A   I don't know that I know what a compelling
12 governmental interest is.
13     Q   Do you believe parking constitutes a
14 compelling governmental interest?
15         MS. HENDERSON:  I'm going to object.  You
16     can answer.
17         THE WITNESS:  Okay.  I believe that the
18     inability of people to park on the site and to
19     back up traffic on the road because they could
20     not get in and out of the site because there is
21     insufficient parking is a public safety issue.
22     Q   (BY MS. JONES)  And I don't mean to belabor
23 this, but is it "compelling"?
24     A   If the --
25         MS. HENDERSON:  Objection.

24

1          THE WITNESS:  -- traffic is backing up
2      onto Roswell Road and backing up one lane of
3      traffic, I believe that is a compelling public
4      interest.
5      Q   (BY MS. JONES)  Does the Scientology
6  property have an entrance from Roswell Road onto the
7  property?
8      A   Yes, it does.
9      Q   And does it go to the parking?
10     A   Yes, it does.
11     Q   Behind the building?  Would it be possible
12 to alleviate that problem by putting someone at the
13 entrance that would prohibit cars from going in once
14 the lot was full?
15     A   That would be another option.  I don't
16 know that, that anyone volunteered to provide that
17 kind of service.
18     Q   Do you ever park down at Fulton County?
19 When you worked down at Fulton County, did you ever
20 park in that building across the street from the
21 Fulton County governmental administrative building?
22     A   On both, in both of the parking decks,
23 yes.
24     Q   And did you ever experience a sign out
25 front that said lot full?

26

1  A   I did indeed.
2  Q   And did you move on when the lot -- well,
3 you probably didn't have to. You probably had a
4 monthly parking pass.
5  A   I did.
6  Q   But that is one way it could have been
7 handled to keep cars from backing up on MLK?
8      MS. HENDERSON: Objection.
9      THE WITNESS: Well, it's, it's a possible
10     way to do it if someone is willing to do that
11     during the periods of operation of the
12     facility.
13 Q   (BY MS. JONES) Did the City suggest that
14 as a possibility?
15 A   I didn't know that it was my
16 responsibility to suggest to the applicant how they
17 address the issue. I addressed the issue in terms
18 of the ability to park on the site. I addressed the
19 issue of what the problem was. It is not the City's
20 obligation, in my view, to prepare the plan for the
21 applicant in order to suggest something which
22 clearly had a significant expense to it. The
23 applicant came forward with another alternative and
24 discussed that with us, and we were perfectly
25 willing to discuss it with them; but it, it would

DEB PUCKETT & ASSOCIATES

---

1 not be our obligation to prepare an application for
2 an applicant.
3  Q   Nor would it be your obligation to come up
4 with a lesser restrictive means to achieve your
5 compelling government interest?
6      MS. HENDERSON: Objection.
7      THE WITNESS: If the applicant had
8     suggested it, I would have evaluated it to see
9     whether it was something that could be done.
10     It was never suggested to us during the, the
11     four deferrals that we had from the mayor, or
12     the four hearings that we had with the mayor
13     and city council, that never arose as an issue.
14 Q   (BY MS. JONES) And I don't want to belabor
15 this either, but I just want to make sure that I'm
16 understanding what you're saying, and that is that
17 the City never suggested that some sort of signage
18 or, or gate or, or monitoring of the entrance off of
19 Roswell Road be instituted by the Church of
20 Scientology to control the flow of traffic on
21 Roswell Road?
22 A   Well, it's not to control the flow of
23 traffic on Roswell Road. It's to ensure that the
24 traffic going into the facility does not slow down
25 the traffic on Roswell Road and impede it in the

DEB PUCKETT & ASSOCIATES

---

27

1 outside and, and turning lanes. And as you know,
2 that is an intersection where we have a variety of
3 turning lines so there's several lanes that would be
4 impacted by that.
5  Q   So phrased that way, the City never
6 suggested an alternate, the idea of gating or
7 blocking or monitoring the entrance?
8  A   I'm not aware that anyone on either,
9 either the applicant nor the City suggested that
10 alternative.
11 Q   Were there any other issues regarding
12 ingress and egress to the Church of Scientology
13 property other than perhaps blocking traffic on
14 Roswell Road?
15 A   The, the City's policy is that parking
16 should be provided on site and if the parking is not
17 capable of being located on site, that there is an
18 appropriate arrangement for off-site parking for
19 required parking. We were never presented with an
20 alternative that met the requirements of the
21 ordinance other than the existing off-site parking,
22 which is located on the post office property, which
23 we showed as continuing forward.
24     But we, there was never, there were
25 alternatives discussed, but there were, there, there

DEB PUCKETT & ASSOCIATES

---

28

1 was nothing presented which we could then
2 incorporate as part of the case.
3  Q   Now, No. 9 of the interrogatories asks the
4 City to identify every church or place of worship
5 for which the City has issued a permit, granted a
6 variance, or approved a zoning application from
7 December 31, 2005 to the present, along with the
8 zoning variance or building permit number
9 associated. And the City did provide a list of, in
10 their responses of churches on an Exhibit D.
11     MS. JONES: I hate the way these exhibits
12     are attachments instead of in the
13     interrogatories.
14     MS. HENDERSON: We provided you so much
15     information that it seemed a systematic way to
16     organize it.
17     MS. JONES: I guess I'm just not used to
18     that much of a system.
19 Q   (BY MS. JONES) Well, within the body of
20 the interrogatories the City listed a number of, a
21 number of places of worship. And I'm going to go
22 through those places of worship and ask you to tell
23 me how the parking, required parking, was calculated
24 for each one of these locations in the ones that you
25 have named. Sandy Springs Christian Church, and it

DEB PUCKETT & ASSOCIATES