UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHURCH OF SCIENTOLOGY OF GEORGIA,    )
INC., a Georgia Corporation,         )
                                     )
            Plaintiff,               )
                                     )
v.                                   )  CIVIL ACTION
                                     )  FILE NO.: 1:10-cv-0082-CAP
CITY OF SANDY SPRINGS, GEORGIA,      )
et. al.                              )
                                     )
            Defendants.              )

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

COME NOW the City of Sandy Springs, Georgia, and its named elected officials, Defendants in the above-styled action and file this their Memorandum of Law in Support of their Motion for Summary Judgment.

### FACTUAL BACKGROUND

Plaintiff, the Church of Scientology of Georgia, is a religious organization that operates a church in Dunwoody, Georgia serving a state-wide congregation of 600 members, 100 of whom are currently active. Complaint ¶¶ 1, 17, 19. Plaintiff is the only Church of Scientology in the state and is classified within the religion as a "Class Five Organization."[1] Deposition

---

[1] Scientology facilities are classified in one of four ways – as groups, missions, Class Five organizations, or advanced organizations. Wright Dep. p. 10-12. This classification is based on the size of the facilities, membership, and the types of services provided at the facility. Id. at 8-14.

1

of Deborah Danos, p. 40, hereinafter "Danos Dep."; Deposition of Robert Wright, p. 10-12, hereinafter "Wright Dep."

In 2005, to accommodate future growth, Plaintiff sought to purchase a new facility. Complaint ¶ 20. The Church of Scientology International (CSI)[2] mandated that all new church facilities conform to the template of a "Class Five Ideal Organization." Complaint ¶ 35; Danos Dep. p. 50-51. While CSI had established some guidelines on the types of services to be provided in a "Class Five Ideal Organization," as of 2005 it had yet to complete its study of the minimum space requirements necessary to house those services. Wright Dep. p. 44-46.

Despite this lack of guidance, in mid-2005 Plaintiff purchased an office building at 5395 Roswell Road, Sandy Springs, Georgia (the "Subject Property"). Complaint ¶¶ 37, 38; Doc. 42-2 p. 12. Situated on 1.78 acres, the Subject Property contains 32,053 square feet of improved office space in three finished stories as well as an 11,193 square foot basement parking garage. Complaint ¶¶ 37, 38; Declaration of Nancy J. Leathers ¶ 5, hereinafter "Leathers Decl." The site is served by a total of 111 parking spaces – 51 on-site surface spaces, 30 on-site garage spaces, and 30 spaces provided for by an easement on the neighboring post office property. Complaint ¶ 48, Doc.

_____

[2] This is the senior ecclesiastical management church for the Scientology religion. Complaint ¶ 34.

42-2 p. 22. There is no other available off-site or public parking within the vicinity of the Subject Property to handle potential overflow. Leathers Decl. ¶ 5.

The S busy intersection of Roswell Road and Glenridge Drive. Complaint ¶ 37. Both of these roads are heavily traveled, major multi-lane streets. Leathers Decl. ¶ 5; Deposition of Mark Moore, p. 36, hereinafter "Moore Dep." On average, this segment of Roswell Road generates almost 36,000 trips daily; the segment of Glenridge Drive generates close to 17,000 trips daily. Id. Local citizens complain that traffic regularly backs up at the already poorly designed intersection and blocks ingress and egress from neighboring apartments and condominiums causing accidents and creating safety hazards. Transcript of Nov. 19, 2009 Planning Commission Meeting, p. 18-19, hereinafter "Tr. of Nov. 19."

In 2009 the true costs of Plaintiff's hasty purchase were revealed. CSI, subsequent to the Plaintiff's purchase, issued mandatory physical space requirements for "Class Five Ideal Organizations" requiring a minimum of 40,000 square feet of improved space. Wright Dep. p. 44-46. The Subject Property could not meet this requirement without conversion of the underground parking area. Complaint ¶¶ 42, 43. Additionally, a zoning condition requiring office use on the Subject Property prohibited the property's use as a church. Leathers Decl. ¶ 4.

As a result, in March 2009 Plaintiff applied for a rezoning and for variances to permit use of the Subject Property as a church and to allow the expansion of the facility by enclosing and finishing the 11,193 square foot parking garage into interior space. Complaint ¶ 42, 43; Leathers Decl. ¶ 5. Plaintiff's proposed renovations eliminated almost a third of the available parking on-site, and no additional parking was proposed to accommodate Plaintiff's proposed expanded use. Complaint ¶ 48, Doc. 42-2 p. 12.

On December 15, 2009, the City Council approved Plaintiff's rezoning application to allow use of the Subject Property as a church. Complaint ¶ 64; City Council Minutes of Dec. 15, 2009 at p. 21-22, hereinafter "Minutes of Dec. 15." The Council, however, denied Plaintiff's request to expand use of the Subject Property based on a lack of sufficient parking. Id. The Council also rejected a proposed set of alternate conditions limiting occupancy of the facility based on concerns regarding enforcement of the occupancy limit and over the potential long term problems associated with allowing the creation of an overdeveloped/under-parked facility.[3] Id.

---

[3] These "Alternate Conditions" were negotiated by Plaintiff with Planning Staff and the City Attorney following the 7/16/09 Planning Commission hearing which recommended approval of the rezoning, but denial of the proposed expansion of the Subject Property. Complaint ¶¶ 55, 56; Leathers Decl. ¶ 15.

Ultimately, this case is about only one thing—Plaintiff's refusal to provide parking sufficient to accommodate its proposed use of the Subject Property. Section 18.2.1 of the Sandy Springs Zoning Ordinance (the "Zoning Ord.") contains a schedule of parking requirements based on industry standards, broken down by use. Leathers Decl. ¶ 6. Based on the use of the property, Staff applies these standards to determine how much parking is required on the site assuming operation at full capacity. Leathers Decl. ¶ 6. For "Churches and Other Places of Worship" parking is generally calculated based on the total number of fixed seats or the total square footage of the largest assembly area. Leathers Decl. ¶ 7. A "Church, Temple, or Place of Worship" is defined as "a facility in which persons regularly assemble for religious ceremonies." Zoning Ord. § 3.3.1. This definition assumes an assembly-type use for large congregational religious worship services. Leathers Decl. ¶ 7.

Early in the zoning process Plaintiff made clear to Planning Staff that Scientology was different from "traditional churches" in that the religion focused on individualized study and coursework rather than large congregational gatherings in the sanctuary. Leathers Decl. ¶ 8. This was further reflected by the fact, unlike most assembly-type churches, the 1,400 square foot sanctuary on the Subject Property only accounted for 3% of the gross floor area.  Id.  Furthermore, Plaintiff intended 100

staff members to be on site at all times, a staffing level never disclosed to the City during its deliberations. Danos Dep. p. 81-82. As such, it was evident that Plaintiff's main use of the property did not fall squarely within the definition of a "Church" under the zoning ordinance and calculating parking based exclusively on the "Church" use standard in Section 18.2.1 was inadequate. Leathers Decl. ¶ 9.

Based on Plaintiff's information concerning its operations, Staff requested from Plaintiff a breakdown of the facility's various uses (office, classroom, sanctuary) by square footage, and then calculated the parking requirement under Section 18.2.1 by totaling the required parking for each type of use. Leathers Decl. ¶¶ 9, 10. Based on this calculation, Plaintiff's renovation required 148 parking spaces. Leathers Decl. ¶ 10. Plaintiff's proposed renovation of the basement parking garage eliminated 30 parking spaces, leaving a total of 81 surface spaces (including the easement area) – far short of the requirement. Id. As a result, Staff recommended approval of Plaintiff's rezoning, but not the proposed expansion. Id.

Plaintiff objected to Staff's parking analysis, insisting there was sufficient parking on the site to meet its subjective requirements. Leathers Decl. ¶ 11. In the months leading up to the Council's decision, Staff struggled to gather more information about the Plaintiff's intended use of the property.

Id. Plaintiff submitted a parking study of its Nashville, Tenn., and Dunwoody, Ga., facilities conducted by Kimley-Horn in June 2009, and supplemented the study in July 2009 with an analysis of a third facility in Buffalo, NY. Leathers Decl. ¶ 12. The parking studies, however, did not provide Staff with information it needed to evaluate parking on the Subject Property, assuming the facility was operating at full capacity. Leathers Decl. ¶ 13. Not only were Plaintiff's comparators not sufficiently similar to the Subject Property, but the study failed to provide necessary information concerning the full operating capacity of each facility and how close each facility was to operating at full capacity at the time of the study. Id.

Despite Plaintiff's failure to provide this essential evaluative information, Staff worked in earnest to come to a solution. Leathers Decl. ¶ 14. Using the information from the parking study, Staff devised a more generous parking ratio that reduced the parking requirement from 148 spaces to 130 spaces. Id. Furthermore, restriping the parking spaces in the surface lot allowed Plaintiff to maximize use of that space, coupled with the easement, at 111 parking spaces, as opposed to 81. Leathers Decl. ¶ 15. Even after the restriping and application of a more generous parking ratio, Plaintiff could not provide sufficient parking to account for its proposed expanded use due

to the physical constraints of the site.   Leathers Dec. ¶¶ 14, 15.

## STANDARD FOR SUMMARY JUDGMENT

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). Summary judgment is required where "a party … fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

To avoid summary judgment, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Plaintiff must come forward with "significant probative evidence" of facts in support of every essential element of its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A "scintilla of evidence" in support of the elements of a claim is insufficient to survive a motion for summary judgment. Id. at 252.

## ARGUMENT & CITATIONS TO AUTHORITY

This is a case about parking. Despite Plaintiff's multitude of religious freedom-based claims, the only real issue is whether Plaintiff must provide parking sufficient to accommodate

its proposed use of the Subject Property. Defendants worked extensively with Plaintiff to understand the unique nature of its proposed use so they could accurately apply the use-based parking standards in the Zoning Ordinance. Despite Plaintiff's own admission that its use of the Subject Property is not like "traditional" assembly-type churches, it insists, for purposes of required parking, it should be treated like one. This argument ignores the reality of Plaintiff's operative use, the definition of "church" in the Zoning Ordinance, and requires Defendants to perpetrate a fiction that endangers the safety and welfare of its citizens. Defendants were sued because they refused to perpetrate that fiction.

I.   PLAINTIFF'S RELIGIOUS FREEDOM CLAIMS

Plaintiff's Complaint asserts a variety of claims based on the guarantees of religious freedom in both the state and federal constitutions.[4] Numerous analytical tests have been developed by the courts to address these claims.[5] Common to all

---

[4] Plaintiff's federal claims include violations of the Religious Land Use & Institutionalized Persons Act (RLUIPA) (Counts I-III, VI ¶ 103),[4] the First Amendment's Free Exercise Clause (Count V), and the First Amendment's Establishment Clause (Count VI). Plaintiff's state claims include violations of freedom of conscience (Count XI, ¶ 133) and freedom of religion (Count XI, ¶ 134) as guaranteed by the Georgia Constitution. Because these claims and their elements are related they are grouped and analyzed together in this section.

[5] The Establishment Clause test provides that a government policy or practice is unconstitutional only if it 1) has no secular purpose, 2) its primary effect advances or inhibits

of these tests is the basic requirement that plaintiff show that the challenged law, either on its face or as-applied, lacks a secular purpose, is non-neutral, or discriminates on the basis of plaintiff's religion or religious practices. Here, only through broad generalizations and assumptions is Plaintiff even able to cobble together the specter of a claim based on its religious freedoms or alleged discrimination. Under the weight of the evidence all of these claims necessarily fail.

## A. Defendants' denial of Plaintiff's proposed expanded use does not discriminate on the basis of Plaintiff's religion or religious beliefs.

Defendants' denial of Plaintiff's proposed expansion was based on only one thing—the lack of adequate parking.

---

religion, or 3) it fosters an excessive entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612-13 (1971).

The test under the Free Exercise Clause is two-fold. First, the Court must determine whether a law is neutral and of general applicability. Church of Lukumi Babalu Aye, Inc v. City of Hialeah, 508 U.S. 520, 531 (1993). If it is not, then it must meet strict scrutiny. Id. at 531-32. This requirement was codified by RLUIPA's "Equal Terms" and "Discrimination" provisions at 42 U.S.C. § 2000cc(b)(1) & (2). H.R. Rep. No. 106-219 at 7 n.9 (quoted in Midrash Shephardi v. Town of Surfside, 366 F.3d 1214, 1231 (11th Cir. 2004). The second stage of the Free Exercise Clause analysis is codified by RLUIPA's "Substantial Burden" provision at 42 U.S.C. § 2000cc(a). Under this analysis, if a Plaintiff establishes that a facially-neutral law imposes a "substantial burden" on religion, then it is subject to strict scrutiny. Id.

Plaintiff's state law freedom of religion and freedom of conscience claims parallel the federal analysis under both the Establishment Clause and Free Exercise Clause. See Pelphrey v. Cobb County, 410 F.Supp.2d. 1324, 1348-49 (2006); Jones v. City of Moultrie, 196 Ga. 526, 530-531 (1943); Leoles v. Landers, 184 Ga. 580, 585-88 (1937).

Defendants' concerns over parking are purely secular. Scientology does not have any beliefs, practices, or religious mandates with respect to parking at its facilities. Wright Dep. p. 54, 72-73. Furthermore, Defendant's decision based on parking does not have the effect of inhibiting Plaintiff's religion. In fact, Defendants approved Plaintiff's use of the existing facility on the Subject Property as a church at the December 15, 2009 rezoning hearing. As a result, Defendants' decision to deny Plaintiff's proposed expansion was based on purely secular concerns over parking and does nothing to inhibit Plaintiff's religion.

Second, Section 18.2.1 of the Zoning Ordinance governing parking, on its face and as-applied in this case, does not discriminate on the basis of religion. Section 18.2.1 is neutral and generally applied to determine required parking for an application. Leathers Decl. ¶ 6. It establishes a table of parking standards keyed to types of uses. Zoning Ord. § 18.2.1. All of the terms in the table are neutrally defined in the Zoning Ordinance based on the nature of the operative use. Zoning Ord. § 3.3.1. In order to calculate required parking Defendants find a use on the table in Section 18.2.1 that best captures the applicant's proposed primary use or uses and then applies the parking standard that correlates to that use or uses assuming the facility operates at maximum capacity. Doc. 42-1 p.

77-79; Leathers Decl. ¶ 6. If the parking standard appears inadequate or has the effect of creating an adverse situation, the Zoning Ordinance affords the City Council flexibility to impose additional mitigating conditions. Zoning Ord. § 28.1 ¶ 3.

In this case, the core of Plaintiff's argument is its claim that Defendants discriminated against Plaintiff on the basis of religion by not classifying it as a "church" use for purposes of calculating the parking requirement under Section 18.2.1. Complaint, ¶¶44-61. This argument ignores the fact that Plaintiff does not meet the definition of a "church" under the Zoning Ordinance.[6] "Churches" in Section 18.2.1 are defined as an assembly-type use. The parking standard applied to this use assumes that peak usage of the facility will be for assembly for congregational worship or religious services. Early in the zoning process Plaintiff admitted that its use was different from a "traditional church" in that it focused on individualized study and coursework. Since Plaintiff was not an assembly-type use, Defendants determined that application of the "church" use parking standard was inadequate to determine what level of

---

[6] This is not to deny that Scientology is a religion as Plaintiff would have this Court believe. Plaintiff's argument ignores the neutral, generally applicable use-based definition of "church" under the Zoning Ordinance and instead relies on the faulty premise that "all religions are churches." This is a dangerous overgeneralization and an imprecise use of language. A church is a type of facility that is used by religions. Not all religions build or use churches. The terms "religion" and "church" are not synonymous and cannot be used interchangeably.

parking was sufficient to service the proposed use. This is not discrimination; it is simply application of a neutral use-based definition in Defendants' Zoning Ordinance.

Furthermore, Defendants initial parking requirement was calculated by consistent application of Section 18.2.1. Leathers Decl. ¶ 10. Defendants' worked with Plaintiff to understand the nature of its proposed used and then calculated parking using a square footage breakdown of uses provided by Plaintiff and the standards in Section 18.2.1. This is how other applications for multi-use religious facilities had been treated. Doc. 41, p. 8-14. For example, Kadampa Meditation Center, located at 6860 Peachtree Dunwoody Road in Sandy Springs applied to Defendants for a rezoning to build a church and boarding house in an existing structure. Id. In that case, Defendants calculated the parking requirement based the same multi-use formula applied to Plaintiff. Id. To the extent that the record reflects that Defendants deviated from Section 18.2.1 in this case, it was based on an attempt to work with Plaintiff following its objection to the initial calculation and resulted in the application of a more generous parking ratio.

Nothing about the process used by Defendants to calculate parking discriminated against Plaintiff on the basis of religion. To the extent that Plaintiff was treated differently, it was only because Plaintiff persuaded Defendants that it was

different, and because of that difference it no longer met the definition of a "Church" under the Zoning Ordinance. Plaintiff's argument requires one to turn a blind eye to the practical realities of a religion's use of its property in favor of an over-generalized fiction that all religions operate and worship the same way. This is simply not the case, and a municipality should not be punished for recognizing the unique nature of Plaintiff's use and faithfully applying the neutral standards of its Zoning Ordinance accordingly.

**B. Furthermore, Defendants' denial of Plaintiff's proposed expansion does not impose a "substantial burden" on Plaintiff's religious exercise.**

Count I (RLUIPA: Substantial Burden) and Count V (Free Exercise Clause) of Plaintiff's Complaint require Plaintiff to establish that Defendant's parking ordinance, on its face or as-applied, imposes a "substantial burden" on Plaintiff's religious exercise. 42 U.S.C. § 2000cc(a); <u>Vision Church, United Methodist v. Village of Long Grove</u>, 468 F.3d 975, 996 (7th Cir. 2006) (noting that 42 U.S.C. 2000cc(a) codifies the second prong of the Free Exercise analysis). Plaintiff cannot establish that its religious exercise is substantially burdened by the Defendants' decision to deny the proposed expansion based on lack of parking.

The 11th Circuit has clearly defined what constitutes a "substantial burden" in the context of free exercise. "[A]

'substantial burden' must place more than an inconvenience on religious exercise; a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly. Thus, a substantial burden can result from pressure that tends to force adherents to forego religious precepts or from pressure that mandates religious conduct." Midrash Shephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1227 (11th Cir. 2004). Plaintiff cannot meet this high bar.

Defendants' parking ordinance, on its face and as applied, does not force Plaintiff to forego any religious precepts. Scientology does not have any beliefs, practices, or religious mandates with respect to parking at its facilities. There is absolutely no evidence to support Plaintiff's claim that it has been forced to forego the practice of its religion because of the application of Section 18.2.1 to deny the expansion of the Subject Property. Plaintiff is entitled to use the existing facility on the Subject Property for the practice of Scientology.

At best, Plaintiff's claims are that they will not be able to deliver their religious services without being "cramped" or pressed for space. See Danos Dep. p. 36-38. While the current facility might be less than "ideal," Plaintiff has made no showing that it is impossible to practice Scientology in the

15

existing facility on the Subject Property. Courts in the 11th Circuit have been unwilling to find a "substantial burden" where plaintiffs are still able to practice their religion, even if in a less than ideal setting. See Midrash Shephardi, Inc., 366 F.3d at 1227 (finding that being forced to walk farther or relocate temple was not substantial burden); The Williams Island Synagogue, Inc. v. City of Aventura, 358 F.Supp.2d 1207 (2005) (finding distractions from religious worship caused by inadequate space were not a substantial burden). Being "cramped" is not a *substantial* burden on Plaintiff's religious exercise; at best it is an inconvenience or mere burden akin to being distracted during the provision of religious services or having to walk farther to get to church. Id.

Additionally, any burden experienced due to a lack of space on the Subject Property is self-imposed and not a result of Defendants denial of Plaintiff's proposed expansion. Plaintiff prematurely purchased the Subject Property without a clear understanding of its spatial needs. Plaintiff attempted to remedy the situation after the fact by sacrificing its parking. The reality, however, is that due to the physical constraints on the site and the lack of parking in the surrounding area Plaintiff cannot do so without unfairly imposing its parking burden on neighboring property owners.

Further mitigating any burden imposed by Defendants'
parking ordinance is the fact that Plaintiff can always choose
to relocate to another facility that more adequately meets the
needs of its congregation. Relocating to a more suitable
facility does not impose a substantial burden. <u>See Men of
Destiny Ministries, Inc. v. Osceola County</u>, 2006 WL 3219321
(M.D. Florida 2006) (holding no substantial burden where church
could relocate and other locations were reasonably available
within the county); <u>Midrash Shephardi, Inc</u>., 366 F.3d at 1227
n.11 (relocating not a burden even if suitable facility is not
available). Here, Plaintiff has produced no evidence to support
any argument that the Subject Property is the only property
available for use or that it is religiously mandated to operate
on the Subject Property. In fact, since they purchased the
property in 2005 Plaintiff has let the facility sit empty and
continued to practice Scientology in a much smaller facility in
Dunwoody. Danos Dep. p. 33-39.

**C. Finally, Defendants' parking requirement is not an
unreasonable limitation on Plaintiff within the City of
Sandy Springs.**

RLUIPA prohibits a municipality from imposing unreasonable
limitations on religious assemblies, institutions, or structures
_within a jurisdiction_. 42 U.S.C. 2000cc(b)(3) (emphasis
supplied). While there is limited case law on this provision,
courts have noted from the legislative history of RLUIPA that, "

'[w]hat is reasonable must be determined in light of all the facts, including the actual availability of land and the economics of religious organizations." <u>Vision Church, United Methodist</u>, 468 F.3d at 990. In light of this legislative history and other district court decisions in the 11th circuit, the relevant inquiry is "whether the number of sites available under the zoning scheme provides a reasonable opportunity for religious expression." <u>Chabad of Nova, Inc. v. City of Cooper City</u>, 575 F.Supp.2d 1280, 1289 (S.D. Fl. 2008).

Here, Plaintiff cannot show that it has been completely excluded from the City or that its opportunities for religious expression have been unreasonably limited by Defendants' parking ordinance. Defendants' parking standards are based on widely-accepted industry standards for traffic and parking generation. Leathers Decl. ¶ 6. Under these standards, Plaintiff is free to practice its religion on the Subject Property which is currently served by sufficient parking and significantly larger than their Dunwoody facility. Plaintiff is also free to sell the Subject Property and purchase another within the City that is large enough to meet both its needs and the Defendants' parking requirement. There is no evidence in the record that Defendants' parking requirements prohibit or even limit Plaintiff's ability to relocate within the City of Sandy Springs.

II.  <u>PLAINTIFF'S REMAINING CLAIMS</u>

In addition to its religious freedom-based claims, Plaintiff's Complaint alleges a variety of other federal and state law claims. For the following reasons all of these claims fail as a matter of law.

**A. Plaintiff's equal protection claims fail because the record shows no similarly situated comparator.**

The federal and Georgia equal protection clauses are coextensive. <u>Hitch v. Vasarhelyi</u>, 302 Ga. App. 381, 387 (2010). Plaintiff must initially identify a similarly situated comparator. <u>Campbell v. Rainbow City</u>, 434 F.3d 1306, 1313 (11th Cir. 2006). To be similarly situated, each of the other projects (a.k.a. comparators) must be "identical in all relevant respects" to Plaintiff. <u>Id.</u> at 1314 (italics in original). If the factors are not identical between Plaintiff and the comparative property, then the comparator is not "similarly situated," and the claim fails. See <u>Campbell</u>, 434 F.3d at 1314 ("'Different treatment of dissimilarly situated persons does not violate the equal protection clause.'") (citation omitted). This requirement is rigorously applied to avoid turning every zoning dispute into a federal constitutional claim. <u>Griffin Industries, Inc.v. Irvin</u>, 496 F.3d 1189, 1207 (11th Cir. 2007).

Plaintiff has not identified a single similarly situated comparator. Plaintiff admitted that it does not operate like a

"traditional church." Plaintiff has not identified a single religious organization that operates like it does. While Plaintiff has identified a variety of religious organizations that have applied for rezoning, use permits, and variances, none of these organizations have been demonstrated to operate in the same manner as Plaintiff. To the extent that the organizations identified were treated as "Church" uses for purposes of Section 18.2.1, the record reflects that they were in fact assembly-type uses, unlike Plaintiff. Doc. 41, pp. 9-10, 15, 24-25, 40-41, 58-59. Since Plaintiff has failed to identify a single similarly situated comparator its equal protection claims must fail, and Defendants are entitled to summary judgment.

**B. Plaintiff's equal protection claims also fail because Plaintiff cannot establish that Defendants lacked any conceivable rational basis.**

Even if a proper comparator is identified, Plaintiff must "negative any reasonably conceivable state of facts that could provide a rational basis" for any difference in treatment. Board of Trustees v. Garrett, 531 U.S. 356, 367 (2001); Leib v. Hillsborough County, 558 F.3d 1301, 1306 (11th Cir. 2009); see also Heller v. Doe, 509 U.S. 312, 320 (1993) (the Town "has no obligation to produce evidence to sustain … rationality …").[7]

---

[7]   Because Plaintiff cannot establish that Defendants discriminated on the basis of religion, rational basis is the appropriate standard in this case. Vision Church, United Methodist, 468 F.3d at 1001.

Within this framework, even a mistaken application of the law may not result in a violation of equal protection. <u>Roma Outdoor Creations, Inc. v. City of Cumming</u>, 599 F.Supp.2d 1332, 1343 (N.D. Ga. 2009) (holding that a "mistaken application of the law may constitute a rational basis."). Similarly, a decision challenged as imprudent or foolish or which violates the law does not make the decision irrational. <u>See, e.g.</u>, <u>Henry Company Homes v. Curb</u>, 548 F.Supp.2d 1281, 1292 (N.D. Fla. 2008).

Here, there are multiple rational reasons supporting Defendants treatment of the Plaintiff. For example, Plaintiff admitted to the Defendants that it was different from "traditional churches" and did not use its facility in the same manner. Another reason was that permitting the development of an under-parked facility was a threat to the public safety and welfare. Doc. 42, p. 23. Plaintiff also did not meet the definition of "church" in the Zoning Ordinance. This is not an exhaustive list and it is not Defendants burden to provide one. <u>Heller</u>, 509 U.S. at 320.

## C. The record is devoid of evidence indicating that Defendants infringed Plaintiff's freedom of speech or assembly under either state or federal law.

Plaintiff's freedoms of speech and assembly are not infringed by Defendants' denial of Plaintiff's proposed expansion of the Subject Property for lack of adequate parking. It is axiomatic that to violate freedom of speech or assembly

under either the state of federal constitution Plaintiff's ability to speak or assemble must actually be limited, either directly or indirectly, by the government. See e.g. American Civil Liberties Union v. The Florida Bar, 999 F.2d 1486, 1492 (11th Cir. 1993) (stating that in a case of "self-censorship" Plaintiff must prove that he "reasonably believed that he had to forego what he considered to be constitutionally protected speech..."). Here, Defendants approved the use of the Subject Property as a church. Nothing prohibits Plaintiff from speaking or assembling anywhere on the Subject Property. Plaintiff's choice not to speak or assemble on the property, for whatever reason, is not a government-imposed limitation. As such, Plaintiff's claims fail as a matter of law.

**D. Plaintiff's federal takings and state inverse condemnation claims fail as a matter of law.**

First, Plaintiff's federal takings claim is not ripe and must be dismissed. "A property owner cannot claim a violation of the [Takings] Clause unless the state provides no procedure (such as an action for inverse condemnation) for obtaining just compensation." Bickerstaff Clay Products Co. v. Harris County, 89 F.3d 1481, 1490-91 (11th Cir. (1996). Georgia provides a procedure for obtaining just compensation—the action for inverse condemnation under the State constitution. Id.; Ga. Const. 1983, Art. I, § III, ¶ I.  Because the State provides a remedy for

22

compensation, no ripe federal claim is presented and the claim must be dismissed. See Reahard v. Lee County, 30 F.3d 1412, 1417 (11th Cir. 1994) ("'As a practical matter, *Williamson* precludes litigation of the merits of a just compensation claim in federal court unless the state declines to provide adequate procedures through which an aggrieved party might seek compensation.'") (citation omitted). Furthermore, Plaintiff's state law inverse condemnation claim is best resolved by the Fulton County Superior Court in the parallel lawsuit, 2010-CV-180058, filed by Plaintiff on January 14, 2010. This Court should withhold judgment on this pure state law issue.

Second, Plaintiff's takings and inverse condemnation claims fail on the merits. An essential element of both Plaintiff's federal takings claim and its state law inverse condemnation claim is proof that the governmental action denied Plaintiff economically viable use of its land. Agripost, Inc. v. Miami-Dade County, 195 F.3d 1225, 1231 (11th Cir. 1999) ("[T]he governmental action must have made the property worthless."); see also Gradous v. Board of Commissioners, 256 Ga. 459, 471 (1986). Not only does Plaintiff have a wide array of uses available to it under the current zoning, Plaintiff is able to make use of the property for the precise reason that it was purchased – for use as a church. Additionally, Plaintiff has provided no evidence of any significant economic harm suffered

as a result of Defendant's denial of their proposed expansion.
This eliminates both the state and federal law claims. See
Nasser v. Homewood, 671 F.2d 432, 438 (11th Cir. 1982); see also
Cobb County v. McColister, 261 Ga. 876, 876 (1992) (rejecting 5th
Amendment takings claim because "appellee still had possession
and use of the land where he could have built in accordance with
the existing zoning ....."); Dover v. City of Jackson, 246 Ga. App.
524, 527-28 (2001).

**E. Plaintiff cannot establish a substantive due process violation under the Georgia Constitution.**

Zoning decisions are presumed valid. Dekalb County v.
Flynn, 243 Ga. 679, 680 (1979). In order to prove a substantive
due process violation under the Georgia Constitution, Plaintiff
must prove by clear and convincing evidence that the zoning
decision is significantly detrimental to it and insubstantially
related to the public health, safety, and welfare. Id. Here,
Plaintiff fails to meet its burden.  Plaintiff has not been
deprived of use of its property, and can in fact make use of it
for the precise purpose that it applied for rezoning – to
operate a church.  Plaintiff has provided no evidence of any
economic harm suffered as a result of Defendants' zoning
decision. To the extent that Plaintiff was harmed by Defendants'
denial of Plaintiff's proposed expansion, the record reveals
that Defendants' decision was based on reasonable public safety

concerns over the sufficiency of parking on the Subject Property. Plaintiff has produced no evidence indicating otherwise.

## CONCLUSION

Having failed to establish a viable claim, Plaintiff is not entitled to any of its requested relief—declaratory judgment, mandamus, injunction, costs under § 1988, or otherwise. Defendants are entitled to summary judgment on all claims presented.

Respectfully submitted this 21st day of December, 2010.

/s/ Laurel E. Henderson
Laurel E. Henderson, Esq.
Georgia Bar No. 346051

HENDERSON & HUNDLEY, P.C.
160 Clairemont Avenue
Suite 430
Decatur, Georgia 30030
Telephone (404) 378-7417
Facsimile (404) 378-7778
E-mail: lhenderson@bellsouth.net

/s/ Wendell K. Willard
Wendell K. Willard, Esq.
Georgia Bar No. 760300

WILLARD & SULLIVAN
Two Ravinia Dr., Suite 1630
Atlanta, GA  30346
Telephone (770) 481-7100
Facsimile (770) 481-7111
E-mail: wendell.willard@sandyspringsga.org

## <u>ADDENDUM TO MEMORANDUM OF LAW IN SUPPORT OF</u>
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Pursuant to Local Rule 7.1, N.D. Ga., the undersigned counsel certifies that the brief filed with the court was prepared with Courier New (12 point), one of the font and point selections approved by the Court in Local Rule 5.1B, N.D. Ga.

This 21st day of December, 2010.

<u>/s/ Laurel E. Henderson</u>
LAUREL E. HENDERSON
Georgia State Bar No. 346051

HENDERSON & HUNDLEY, P.C.
160 Clairemont Avenue
Suite 430
Decatur, Georgia 30030
Telephone (404) 378-7417
Facsimile (404) 378-7778
Email: lhenderson@bellsouth.net

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| CHURCH OF SCIENTOLOGY OF GEORGIA, INC., a Georgia Corporation, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) FILE NO.: 1:10-cv-0082-CAP |
| CITY OF SANDY SPRINGS, GEORGIA a Municipal Corporation of the State of Georgia; the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA, EVA GALAMBOS, in her Official Capacity as Mayor of the City of Sandy Springs,Georgia; and JOHN PAULSON, DIANNE FRIES, WILLIAM COPPEDGE COLLINS, JR, ASHLEY JENKINS, TIBERIO DeJULIO and KAREN MEINZEN McENERNY, Individually in Their Official Capacities as Members of the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on December 21, 2010 I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

G. Douglas Dillard, Esq.
Andrea Cantrell Jones, Esq.

Lauren M. Hansford, Esq.

/s/ Laurel E. Henderson
Laurel E. Henderson, Esq.
State Bar No. 346051

HENDERSON & HUNDLEY, P.C.
160 Clairemont Avenue
Suite 430
Decatur, Georgia 30030
Telephone (404) 378-7417
Facsimile (404) 378-7778
Email: lhenderson@bellsouth.net