UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHURCH OF SCIENTOLOGY OF GEORGIA, INC., a Georgia Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF SANDY SPRINGS, GEORGIA a Municipal Corporation of the State of Georgia; the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA, EVA GALAMBOS, in her Official Capacity as Mayor of the City of Sandy Springs, Georgia; and JOHN PAULSON, DIANNE FRIES, WILLIAM COPPEDGE COLLINS, JR, ASHLEY JENKINS, TIBERIO DeJULIO and KAREN MEINZEN McENERNY, Individually in Their Official Capacities as Members of the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA<br><br>    Defendants. | CIVIL ACTION<br>FILE NO.: 1:10-cv-0082-CAP |

### DECLARATION OF NANCY J. LEATHERS

COMES NOW, Nancy J. Leathers and, in accordance with 28 U.S.C. § 1746, hereby declares under penalty of perjury as follows:

1.

My name is Nancy J. Leathers. I am over the age of 21. I am competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated in this Declaration and know them to be true. I understand that

this Declaration is to be used in connection with the above-referenced civil action, and I give it freely for that purpose.

2.

I served as Director of Community Development for the City of Sandy Springs from before the City's inception until my retirement on November 30, 2010. From 1980 through July 1, 2000, I was employed by Fulton County. I previously served as Director of Community Development for Fulton County from 1991 through July, 2000 when I retired from the County. From the period September, 2003 through October, 2005, I served as Executive Director of Sandy Springs Revitalization, Inc. (SSRI).

3.

As Director of Community Development for the City of Sandy Springs I oversaw all planning, zoning, land development and code enforcement for the City of Sandy Springs. I was also charged with making official interpretations of ordinances within the reach of the Department.

4.

Plaintiff submitted an application for rezoning and for variances in March 2009. Previous zoning conditions attached to the property by Fulton County prior to the City's incorporation limited the property's use to office use only. Because Plaintiff sought to utilize the building as a church, rezoning

was necessary to remove the limiting conditions. In my capacity as Director of Community Development, I provided oversight of staff's handling of all aspects of the application and was personally involved in numerous meetings with the Plaintiff's representatives.

5.

During the review process, parking emerged as a substantial issue in the rezoning analysis. Specifically, staff is charged with establishing a sufficient level of on-site parking to contain a use's anticipated needs. The site at issue is bounded by two major multilane streets. No street parking is allowed, and no commercial parking garages exist within close proximity to the site. The parking issue was further exacerbated by Plaintiff's desire to modify an existing 32,053 square foot three story building with underground parking into a four story building of 43,916 square feet by elimination of the underground parking garage.

6.

Section 18.2.1 of the Sandy Springs Zoning Ordinance (the "Zoning Ordinance") consists of a table that is used to determine required parking based on various types of uses or functions. The parking requirements found in that table were derived from Fulton County's zoning ordinance and were initially developed based on standards from the Institute of

Transportation Engineers (ITE) or its predecessor organization. The ITE is the industry standard for evaluating trip and parking generation. This organization utilizes on-going research generated by institutions and local agencies to update this information on a regular basis. Planning Staff uses the standards in Section 18.2.1 to calculate the amount of parking required under the ordinance in order to accommodate full capacity use of a proposed facility/building.

7.

Section 18.2.1 of the Zoning Ordinance provides that parking for a "Church or Other Place of Worship" be calculated based on the number of fixed seats or the square footage of the largest assembly area. This standard, as evidenced by the definition of "Church or Other Place of Worship" under the Zoning Ordinance, assumes that the most intensive use of the facility is for assembled groups of people for religious ceremonies or worship. As a result, the standard, which is based on studies and research conducted by ITE, is designed to provide sufficient parking to accommodate peak usage of the facility correlating to use of the largest assembly area for religious services or worship. Application of the "Church or Other Places of Worship" standard under Section 18.2.1 to Plaintiff's property would have resulted in a requirement of only 41 parking spaces for a 43,916 square foot facility.

8.

Early in the zoning process, at a community meeting, Plaintiff's representatives made it clear that its facility operated differently than "traditional churches." Unlike "traditional churches" the Church of Scientology focuses more on individualized study and coursework and less on group assembly for religious services. As a result, group use of the sanctuary does not generate the largest number of people coming to the site. This was further reflected by the fact that the sanctuary in Plaintiff's facility, unlike most assembly-type churches, accounted for only three percent (3%) (1,218 square feet of a 43,916 square foot building) of the gross floor area of the facility.

9.

Based on this information and the Zoning Ordinance, Staff determined that application of the Section 18.2.1 "Church or Other Places of Worship" standard to Plaintiff would create an adverse situation related to parking and traffic patterns for the proposed development and surrounding area. Section 28.1, paragraph 3 of the Zoning Ordinance, authorizes the City Council to impose conditions where necessary and appropriate to mitigate potential adverse influences or otherwise promote the public health, safety, or general welfare. Based on this authority, Staff requested from Plaintiff a breakdown by square footage of

the proposed uses of the facility so that a parking requirement that more accurately accommodated Plaintiff's proposed functions could be calculated. In response, Plaintiff indicated that the facility was planned to house a 1,218 square foot sanctuary, 11,153 square feet of classrooms, and 17,065 square feet of offices.

10.

Using this information, Staff calculated the parking requirement by applying the parking standard for each function under Section 18.2.1 and then totaling the amount of required parking for each use. Under this formula, Plaintiff was required to provide 148 parking spaces – 41 for the sanctuary, 56 for the classrooms, and 51 for the offices. Plaintiff proposed eliminating 30 of the 111 existing parking spaces through conversion of an underground parking deck to improved space, leaving the site with only 81 parking spaces, well shy of the 148 required. As a result, Staff's initial report recommended approval of the rezoning which would have allowed use of the site as a church, but denial of the proposed expansion of the facility.

11.

Plaintiff disagreed with Staff's first parking calculation. In an effort to accommodate Plaintiff's concerns, staff requested that the applicant provide parking studies of similar

Church of Scientology sites in order to help Staff understand the proposed use and more accurately gauge the parking required by that use when operating at full capacity.

12.

Plaintiff submitted two parking studies conducted by Kimley-Horn. The first study was submitted in June 2009 and analyzed parking at the Dunwoody, Georgia location and the Nashville, Tennessee location. The second study was submitted in July 2009 and analyzed parking at the Buffalo, NY location. These studies showed the current square footage of the facilities, the breakdown of occupancy at particular times on particular days, and the number of parking spaces being utilized.

13.

The studies, however, lacked essential information and were determined by Staff to be insufficient for purposes of calculating required parking assuming full operating capacity. Both the Nashville and Buffalo studies did not provide the operating capacity of the facilities or in any way indicate how close the facility was to operating at full capacity. Adding to the difficulty, the Nashville facility had only been open for a few months at the time of the study. The Dunwoody study did not provide any information on the number of parking spots available at the site. Only the Nashville study provided the number of

parking spots required by the City parking code and the number of parking spaces provided on site. However, without any information on operating capacity to compare with the information provided on actual parking usage, Staff lacked a necessary point of reference to gauge the adequacy of parking at that facility.

14.

Despite the inadequacy of Plaintiff's parking studies, Staff used the information that was provided in the studies to calculate an alternate parking ratio. The ratio was derived by dividing the total square footage of the Nashville facility, 38,000 square feet, by the number of parking spots provided at the Nashville facility, 114. This resulted in a parking ratio of 3 spaces per 1000 square feet. Applied to the Plaintiff's Sandy Springs facility, this ratio yielded a requirement of 130 spaces for the proposed 43,916 square foot facility. If the facility were left in its current configuration at 32,053 square feet, then only 97 spaces were required. As such, Staff recommended that the rezoning be approved, but that the proposed expansion of the facility be denied for lack of adequate parking.

15.

As a result of this recommendation, Plaintiff submitted a set of alternative conditions that sought to voluntarily limit

occupancy of the building and reconfigure the parking lot. By reconfiguring the surface parking lot through the addition of compact spaces, Plaintiff increased the number of spaces external to the building from 81 to 111 spaces – with 86 regular spaces, 20 compact spaces, and 5 handicap spaces. Plaintiff also agreed to voluntarily limit the occupancy of the facility. Originally, Plaintiff limited occupancy to 283 people based on the being 81 parking spaces and applying a ratio of 3.5 people per vehicle. Plaintiff then lowered the occupancy limit to 170 people based on there being 111 parking spaces and applying a ratio of 1.5 people per vehicle.

16.

Staff determined that 111 parking spaces would be sufficient to accommodate use of the facility if it could indeed be limited to 170 occupants. This determination, however, did not evaluate any potential enforcement issues pertaining to the proposed occupancy limit and did not address what would occur if a violation of the voluntary and artificial occupancy limit were to occur.

17.

The City Council ultimately rejected the proposed alternate conditions, but approved rezoning to allow church use under staff's primary recommended conditions.

18.

I have read this Declaration consisting of 18 numbered paragraphs and, pursuant to 28 U.S.C. § 1746 and Rule 43(d) of the Federal Rules of Civil Procedure, declare that under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of December, 2010.

*/s/ Nancy J. Leathers*
NANCY J. LEATHERS

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| CHURCH OF SCIENTOLOGY OF GEORGIA, INC., a Georgia Corporation,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF SANDY SPRINGS, GEORGIA a Municipal Corporation of the State of Georgia; the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA, EVA GALAMBOS, in her official Capacity as Mayor of the City of Sandy Springs , Georgia; and JOHN PAULSON, DIANNE FRIES, WILLIAM COPPEDGE COLLINS, JR, ASHLEY JENKINS, TIBERIO DeJULIO and KAREN MEINZEN McENERNY, Individually in Their Official Capacities as Members of the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA<br><br>  Defendants. | CIVIL ACTION<br>FILE NO.: 1:10-cv-0082--CAP |

## CERTIFICATE OF SERVICE

I hereby certify that on December 21st, 2010 I electronically filed the foregoing **DECLARATION OF NANCY J. LEATHERS** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

G. Douglas Dillard, Esq.
Andrea Cantrell Jones, Esq.
Lauren M. Hansford, Esq.

/s/ Laurel E. Henderson
Laurel E. Henderson, Esq.
State Bar No. 346051

HENDERSON & HUNDLEY, P.C.
160 Clairemont Avenue
Suite 430
Decatur, Georgia 30030
Telephone (404) 378-7417
Facsimile (404) 378-7778
Email: lhenderson@bellsouth.net