IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHURCH OF SCIENTOLOGY OF GEORGIA,   )
INC., a Georgia Corporation,        )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )        CIVIL ACTION
                                    )        FILE NO. 1:10-CV0082 CAP
CITY OF SANDY SPRINGS, GEORGIA,     )
et al.                              )
                                    )
        Defendants.                 )

## PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

COMES NOW Plaintiff CHURCH OF SCIENTOLOGY OF GEORGIA, INC. and files this response to Defendants' Statement of Material Facts Not in Dispute as follows:

1.

**STATEMENT**:  Plaintiff, the Church of Scientology of Georgia, is a religious organization that operates a church in Dunwoody, Georgia. Complaint ¶ 1.

**RESPONSE**:  Undisputed that Plaintiff, the Church of Scientology of Georgia, is a religious organization that operates a church (the "Church").  However, after filing the Complaint in this action, the Church subsequently moved its congregation to a new

154676.1                          1

temporary location at 4588 Winters Chapel Road, DeKalb County,

Georgia. Affidavit of Deborah Q. Danos, Doc. 38-2, ¶ 4.

2.

**STATEMENT:**  Plaintiff serves a state-wide congregation of 600

members, 100 of whom are currently active.  Doc. 1, Complaint ¶¶

1, 17, 19.

**RESPONSE:**  Undisputed.

3.

**STATEMENT:**  Scientology facilities are classified in one of four

ways - as groups, missions, Class Five organizations, or advanced

organizations. Wright Dep., pp. 10-12.

**RESPONSE:**  Undisputed.

4.

**STATEMENT:**  An organization's classification as a group, mission,

church, or advanced organization is based on the size of the

facilities, membership, and the types of services provided at

the facility. Wright Dep. pp. 8-14.

**RESPONSE:**  Partially disputed. LR 56.1 (3)(b) objection:  While

the statement is somewhat true (at least on classification), Mr.

Wright did not speak about the membership and types of services

provided. Doc. 56, Wright Dep. pp. 8-14.

5.

**STATEMENT**:  The Church of Scientology International (CSI) is the senior ecclesiastical management church for the Scientology religion.  Complaint ¶ 34; Doc. 1.

**RESPONSE**:  Undisputed.

6.

**STATEMENT**:  Plaintiff is the only Church of Scientology in the state.  Deposition of Deborah Danos, p. 40, hereinafter "Danos Dep."

**RESPONSE**:  Undisputed.  LR 56.1 (3)(c) objection:  not material.

7.

**STATEMENT**:  Plaintiff is classified within the religion as a "Class Five Organization.  Wright Dep. p. 10-12.

**RESPONSE**:  Undisputed.

8.

**STATEMENT**:  In 2005, to accommodate future growth, Plaintiff sought to purchase a new facility. Complaint ¶ 20.

**RESPONSE**:  Disputed. LR 56.1 (3)(b) objection: The Complaint states at paragraph 20 that "The Church acquired the Property in 2005 to comply with Scientology doctrine and for future growth, which it is unable to accommodate at the Dunwoody location." Doc. 1; Doc. 38-2, Affidavit of Deb Danos ¶6.

9.

**STATEMENT**:  CSI mandates that all new church facilities conform

to the template of a "Class Five Ideal Organization." Complaint

¶ 35; Danos Dep. pp. 50-51.

**RESPONSE**:  Undisputed.

10.

**STATEMENT**:  While CSI had established some guidelines on the

types of services to be provided in a "Class Five Ideal

Organization" as of 2005, it had yet to complete its study of the

minimum space requirements necessary to house those services.

Wright Dep. p. 44-46.

**RESPONSE**: Undisputed.  LR 56.1 (3)(c) objection:  not material.

Although the study was not complete as of 2005, the size of the

building on the Subject Property was an important factor in CSI's

approval for purchase.  The Atlanta Church submitted a checklist

for the building located at 5395 Roswell Road, Sandy Springs,

Georgia in 2004.   Doc 38-3, Ex. "C," Wright Aff. ¶ 24.  <u>See</u>

Building Investment Checklist p. 8, noting that the 43,000 square

foot building is enough room for all of the needed function of

the Church, attached hereto as Exhibit "I."

11.

**STATEMENT**:  Despite this lack of guidance, Plaintiff in mid-2005

purchased an office building (the "Subject Property") located at

5395 Roswell Road, Sandy Springs, Georgia.  Complaint ¶¶ 37, 38;

Doc. 42-2 p. 12.

**RESPONSE**:  Disputed.  LR 56.1 (3)(c) objection:  not material.  LR

56.1 (3)(b) objection.  The statement is pure editorializing and

not supported by the text of paragraphs 37 and 38 of the

Complaint, which state:

> In 2005 the Church purchased the Property, which
> comprises approximately 1.78 acres of real property
> located in the northeast quadrant of the intersection
> of Glenridge Drive and Roswell Road, in Land Lots 91
> and 92 of the 17th District of the City of Sandy
> Springs, Fulton County, Georgia.  The Property is
> benefitted by a perpetual easement for ingress and
> egress and parking over, upon and across 0.6 acres of
> land (the "Easement"), located immediately adjacent to
> the Property.

Paragraph 38 states:

> The Property is currently developed with a 43,916
> square foot building.  The building has four (4)
> floors, including an 11,193 square foot basement, which
> was previously used for parking by the prior office
> use.

Doc. 1.  Deb Danos testified that if a local church wanted to

change locations and move into a new building, it would have to

be approved by CSI before it could be used.  Doc. 55, Danos Dep.

p. 33: 13-17.

Further, there is no evidence that supports the claim CSI

gave no guidance.  Instead, there is testimony that a thorough

study was made by CSI prior to its purchase of the Subject

Property's suitability for its use as a Class Five Ideal Org.
The Atlanta Church submitted a checklist for the building located
at 5395 Roswell Road, Sandy Springs, Georgia in 2004. Ex. "C,"
Wright Aff. ¶ 24, Doc. 38-3; Ex. "I," attached hereto.

12.

**STATEMENT:**  Situated on 1.78 acres, the Subject Property contains
32,053 square feet of improved office space in three finished
stories, as well as an 11,193 square foot basement currently set
up as a parking garage. Complaint ¶¶ 37, 38; Declaration of Nancy
J. Leathers ¶ 5, hereinafter "Leathers Decl."

**RESPONSE:**  Disputed.  LR 56.1 (3)(b) objection:  Only a portion
of the 11,193 square foot basement floor was used for parking (30
spaces).  The basement area is completely enclosed and the
remainder is being used for mechanical rooms, storage, elevator
entries and office spaces.  Doc. 55, Danos Dep. pp. 59-60.

13.

**STATEMENT:**  The site is served by a total of 111 parking spaces -
51 on-site surface spaces, 30 on-site garage spaces, and 30
spaces provided for by an easement on the neighboring post office
property. Complaint ¶ 48, Doc. 42-2 p. 22.

**RESPONSE:**  Disputed. LR 56.1 (3)(b) objection:  Defendants
mischaracterize the text of ¶ 48 of the Complaint, which states
that:

> The Zoning Ordinance provisions relevant to 'Churches and other places of worship' requires one (1) parking space for every thirty (30) square feet of floor area in the largest assembly area without fixed seats or one (1) parking space for every 3.5 seats in the largest assembly area with fixed seats.  Zoning Ordinance § 18.2.1.  Based on the Zoning Ordinance, the Church would be required to provide forty-six (46) parking spaces.  The Property currently has fifty-one (51) parking spaces on-site and has a perpetual easement for thirty (30) additional spaces, located immediately to the east of the Property.  The Church has offered and plans to reconfigure the available parking areas to increase the available number of parking spaces to 111 spaces, which would amount to 2.4 times the City Code.

Doc. 1.

14.

**STATEMENT:**   There is no other available off-site or public parking within the vicinity of the Subject Property to handle potential overflow. Leathers Decl. ¶ 5.

**RESPONSE:** Disputed.  LR 56.1 (3)(b) objection:  Defendants mischaracterize ¶ 5 of Ms. Leathers' Declaration.  Ms. Leathers does not state that "there is no other available off-site or public parking in the vicinity to handle potential overflow." Ms. Leathers states that  "No street parking is allowed and no commercial parking garages exist within close proximity to the site." Doc. 43-3, Leathers Decl. ¶5.   Moreover, available off-site or public parking is available within close proximity to the site and the locations of these parking spaces.  See Doc. 64-1, Second Aff. of Deborah Danos ¶ 4.

15.

**STATEMENT:**  The Subject Property is located on the northeast corner of the intersection of Roswell Road and Glenridge Drive. Complaint ¶ 37.

**RESPONSE:**  Undisputed.

16.

**STATEMENT:**  Both of these roads are heavily traveled, major multi-lane streets.  Leathers Dec. ¶ 5; Deposition of Mark Moore, p. 36, hereinafter "Moore Dep."

**RESPONSE:** Undisputed.

17.

**STATEMENT:**  On average, the segment of Roswell Road next to the Subject Property generates almost 36,000 trips daily. Moore Dep. p. 36.

**RESPONSE:** Undisputed.

18.

**STATEMENT:**  The segment of Glenridge Drive next to the Subject Property generates close to 17,000 trips daily. Moore Dep. p. 36.

**RESPONSE:**  Undisputed.

19.

**STATEMENT:**  Local citizens testified at public hearing traffic regularly backs up at the intersection and blocks ingress and

egress from neighboring apartments and condominiums causing accidents and creating safety hazards. Transcript of Nov. 19, 2009 Planning Commission Meeting, p. 18-19, hereinafter "Tr. of Nov. 19."

**RESPONSE**: LR 56.1 (3)(c) objection:  Undisputed that traffic backs up at the intersection.  LR 56.1 (3)(b) objection:  The testimony does not support a conclusion that use of the Subject Property as requested would cause additional back up. Defendants' traffic engineer, Mark Moore testified that he examined ingress and egress to the site access and he found it to be adequate for the purposes that the church intended to use on the site for the full 43,916 square feet.  He did not see any problem with it. Doc. 44-3, Moore Dep. pp. 41:6-42:3. Further, Mr. Moore found that the 36,000 average daily trips on Roswell Road and the 17,000 trips per day on Glenridge Drive were not enough to affect the level of service ("LOS") of the operation of that intersection, that adding the volume proposed by the Church's 43,916 sq. ft. building did not change the LOS in the peak times (the Church's proposed use at 43,916 added 97 trips in the morning and 128 trips in the afternoon, adding only "sort of a drop in the bucket," and that access to the subject Property was adequate for the purposes of intended use on the site. Doc. 44-3, Moore Dep. pp. 36, 37. Based on the Parking study performed by

154676.1                          9

Kimley-Horn, attendance at the Church occurs mainly in the evenings during the week and on weekends.  Doc. 39-1 and -2, Kimley-Horn Parking Study p. 3, Ex."E."

20.

**STATEMENT**:  CSI, subsequent to the Plaintiff's purchase, issued mandatory physical space requirements for "Class Five Ideal Organizations" requiring a minimum of 40,000 square feet of improved space. Wright Dep. p. 44-46.

**RESPONSE**:  Disputed. LR 56.1 (3)(b) objection:  The minimum space requirements were identified prior to the purchase of the Subject Property.  See 2004 Building Investment Checklist p. 8, noting that the 43,000 square foot building is enough room for all of the needed function of the Church, attached hereto as Exhibit "I," LR 56.1 (3)(c) objection: not material.

21.

**STATEMENT**:  The Subject Property could not meet the 40,000 square foot requirement without conversion of the underground parking area. Complaint ¶¶ 42, 43.

**RESPONSE**:  Disputed.  LR 56.1 (3)(b) objection:  The basement area does not require "conversion."  The basement area is already enclosed and being used for mechanical rooms, storage, elevator entries and office spaces. Doc. 55, Danos Dep.  pp. 59-60.

154676.1

Plaintiff admits that it needs to be able to use the entire 43,916 square foot building for religious purposes. Doc. 55. Danos Dep. p. 112.

22.

**STATEMENT:**  A zoning condition, requiring the Subject Property be used for office use only, prohibited the property's use as a church.  Leathers Decl. ¶ 4.

**RESPONSE:**  Undisputed.

23.

**STATEMENT:**  As a result, in March 2009 Plaintiff applied for a rezoning and for variances to permit use of the Subject Property as a church. Complaint ¶ 42, 43; Leathers Decl. ¶ 5.

**RESPONSE:**  Undisputed.

24.

**STATEMENT:**  Plaintiff also sought to allow the expansion of the facility by enclosing and finishing the 11,193 square foot parking garage into interior space. Complaint ¶ 42, 43; Leathers Decl. ¶ 5.

**RESPONSE:**  Disputed.  LR 56.1 (3)(b) objection:  The basement is completely enclosed and is not a "parking garage."  A portion of the basement was used for parking (30 spaces).  See Defendants' Statement No. 13 hereinabove.  These 30 spaces will be replaced

by restriping the outside on-site parking area. See Defendants'

Statement No. 43 hereinbelow.  Plaintiff sought to convert the

entire 11,193 square foot basement to religious uses, including a

proposed 1,218 square foot chapel in the area formerly used for

parking. Doc. 1, Complaint ¶¶ 42, 43.

25.

**STATEMENT**:  Plaintiff's proposed renovations eliminated almost a

third of the available parking on-site. Complaint ¶ 48, Doc. 42-2

p. 12.

**RESPONSE**: Disputed.  LR 56.1 (3)(b) objection:  Statement No. 25

misstates Complaint ¶ 48.  The Subject Property would have 111

parking spaces by restriping the existing parking lot, the same

number as it had before renovation of the building.  See

Defendants' Statement of Material Facts not in Dispute, Statement

No. 43.

26.

**STATEMENT**:  No additional parking was proposed to accommodate

Plaintiff's proposed expanded use. Complaint ¶ 48; Doc. 42-2 p.

12.

**RESPONSE**:  Disputed.  LR 56.1 (3)(b) objection: Alternate

conditions, which addressed additional parking were proposed and

accepted by Staff.  Doc. 42-1, Leathers Dep. Ex. D-5.  The 30

parking spaces in the basement will be replaced by restriping the

outside on-site parking area. See Defendants' Statement No. 43
hereinbelow.

27.

**STATEMENT:**  On December 15, 2009, the City Council approved
Plaintiff's rezoning application to allow use of the Subject
Property as a church. Complaint ¶ 64; City Council Minutes of
Dec. 15, 2009 at p. 21-22, hereinafter "Minutes of Dec. 15."

**RESPONSE:**  Disputed. LR 56.1 (3)(b) objection: The City Council
did not "approve" Plaintiff's rezoning application as requested.
The City Council reduced the requested size of the Church from
43,916 square feet to 32,053 square feet. Doc. 42-1, Leathers
Dep.  p. 22.

28.

**STATEMENT:**  The Council denied Plaintiff's request to expand use
of the Subject Property based on a lack of sufficient parking.
Id.

**RESPONSE:**  Disputed.  LR 56.1 (3)(b) objection:  The parking
available exceeded the requirements of the Sandy Springs Zoning
Ordinance § 18.2.1 under Churches and Other places of Worship.
Proper application of section 18.2.1 "would have resulted in a
requirement of only 41 parking spaces for the 43,916 square foot
facility."   Doc. 43-3, Leathers Decl. ¶ 7.  The Property
currently has fifty-one (51) parking spaces on-site and has a

perpetual easement for thirty (30) additional spaces, located immediately to the east of the Property. The Church has offered to reconfigure the existing on-site parking areas to increase the available number of parking spaces to 111 spaces, which would amount to 2.4 times the City Code. Doc. 1, Complaint ¶ 48.

29.

**STATEMENT:**  Section 18.2.1 of the Sandy Springs Zoning Ordinance (the "Zoning Ordinance") contains a schedule of parking requirements based on industry standards and broken down by use. Leathers Decl. ¶ 6.

**RESPONSE:**  Undisputed.

30.

**STATEMENT:**  Based on the use of a property, Staff applies these standards to determine how much parking is required on the site, assuming operation at full capacity. Leathers Decl. ¶ 6.

**RESPONSE:**  Disputed.  LR 56.1 (3)(b) objection: The Parking Ordinance does not incorporate or assume operation and full capacity and it has not been the City's policy to determine parking requirements based on full capacity of a church.  LR 56.1 (3)(c) objection: not material.  The only provision of Section

18.2.1 applicable to a church with no multi-use is the requirement for "Churches and Other places of Worship." [1]

31.

**STATEMENT:** For "Churches and Other Places of Worship" parking is generally calculated based on the total number of fixed seats or the total square footage of the largest assembly area. Leathers Decl. ¶ 7.

**RESPONSE:** Undisputed.

32.

**STATEMENT:** A "Church, Temple, or Place of Worship" is defined in the Zoning Ordinance as "a facility in which persons regularly assemble for religious ceremonies." Zoning Ord. § 3.3.1.

**RESPONSE:** Partially disputed. LR 56.1 (3)(b) objection: The City incompletely quotes Section 3.3.3, which includes the following additional language:  "This shall include, on the same lot, accessory structures and uses such as minister's and caretaker's residence, and other uses identified under the provision for Administrative and Use Permits."  Doc. 49-1; Zoning Ordinance, Section 3.3.3.

---

[1] On the other hand, the Kadampa Meditation Center is a multi-use.

33.

**STATEMENT**:  Early in the zoning process Plaintiff made clear to Planning Staff that Scientology was different from "traditional churches" in that the religion focused on individualized study and course work rather than large congregational gatherings in the sanctuary.  Leathers Decl. ¶ 8.

**RESPONSE**:  LR 56.1 (3)(c) objection:  not material.  Disputed. In response to concerns expressed that Plaintiff would cause substantial traffic problems like those caused by another church in the area, Plaintiff assured the Planning Staff and the public that Church of Scientology's services would not create the same traffic problems.  Plaintiff further explained that while it did conduct regular Sunday services, it would not create the same traffic problems on Sunday mornings as a "traditional" Christian church.  The Church currently conducts and plans to continue to conduct regular religious assemblies in the building.  Defendants have not contradicted this and have not provided any evidence to the contrary.

The Zoning Ordinance defines a Church or Other Place of Worship as "a facility in which persons regularly assemble for religious ceremonies."  Doc. 49-1, p. 15.  The Zoning Ordinance does not set forth  maximum or minimum sizes for the assembly for religious ceremonies or that they be "congregational" in nature.

Nor is it a requirement that the assembly be on Sunday (though in this case, Plaintiff conducts regular Sunday services); the only requirement is to regularly assemble for religious ceremonies. Additionally, "Scientology Churches also hold congregational services on Sundays, religious holidays and certain other occasions." Doc. 38-1, Aff. of Allan Cartwright, ¶ 27; Doc. 38-2, Danos Aff. ¶ 15.

34.

**STATEMENT:**  The 1,400 square foot sanctuary on the Subject Property only accounted for 3% of the gross floor area.

**RESPONSE:**  LR 56.1 (3)(c) objection:  not material.  <u>See</u> Response to Defendants' Statement of Material Facts not in Dispute No. 33.  LR 56.1 (3)(b) objection: The requested size of the chapel was 1,218 square feet.  Doc. 39-1, Kimley-Horn Traffic Study, p. 1.  The percentage of gross floor area for the largest assembly room is not a criteria to determine required parking under the Zoning Ordinance.

35.

**STATEMENT:**  Plaintiff intended 100 staff members to be on-site at all times. Doc. 55, Danos Dep. p. 81-82.

**RESPONSE:**  Undisputed.

36.

**STATEMENT**:  Based on Plaintiff's information concerning its operations, Staff requested from Plaintiff a breakdown of the facility's various uses (office, classroom, sanctuary) by square footage, and then calculated the parking requirement under Section 18.2.1 by totaling the required parking for each type of use. Leathers Decl. ¶¶ 9, 10.

**RESPONSE**:  Disputed.  LR 56.1 (3)(b) objection. The City did not follow Section 18.2.1 in calculating the parking requirement for the Church.  Doc 43-3, Leathers Decl. ¶¶ 9, 10.  Nor did the City consider the actual manner in which the Church uses its space.

> Many course rooms relate to one another, such that as
> many as five (5) course rooms may be utilized by the
> students of one class, who migrate from room to room at
> their own pace during a study period; thus, not all
> course rooms will be used at any one time, and all
> course rooms will certainly not be at full capacity
> within any one time period.

Doc. 38-1, Cartwright Aff. ¶ 21.  Defendants cite no evidence that Plaintiff intends to use the Property for any principal use other than that of a church, as defined under the Zoning Ordinance.

37.

**STATEMENT**:  Based on this calculation, Staff concluded Plaintiff's renovation required 148 parking spaces. Leathers Decl. ¶ 10.

**RESPONSE:**  Disputed. LR 56.1 (3)(b) objection: The City's calculation was contrary to Section 18.2.1 for churches.  Doc. 38-5, Leathers Dep. Ex. D-1.

38.

**STATEMENT:**  Plaintiff's proposed renovation of the basement parking garage eliminated 30 parking spaces, leaving a total of 81 surface spaces (including the easement area) - far short of the requirement. Id.

**RESPONSE:**  Disputed. LR 56.1 (3)(b) objection:  See response to Statements No. 13 and 37 herein.  See Defendants' Fact No. 43 herein.

39.

**STATEMENT:**  Staff recommended approval of Plaintiff's rezoning, but not the proposed expansion.  Id.

**RESPONSE:**  Disputed.  LR 56.1 (3)(b) objection: After extended discussions between the Staff, the City Attorney and representatives of the Church, on September 1, 2009, Staff recommended approval of zoning 32,053 square feet of the building for use as a church with conditions or the approval of the zoning and variance requests to allow the Church's use at 43,916 square feet with 81 parking spaces with Alternate Conditions that included, among others, a 283-person occupancy cap.  Doc. 42-1, Ex. 23 (R000326) to Leathers Dep., Ex. "D."  In its October 6,

154676.1                           19

2009 report, Staff again recommended approval of both the 32,053 square foot building with conditions and the 43,916 square foot building with the Alternate Conditions, this time with a maximum capacity of 170 persons. Doc. 42-1, Ex. 24 (R000405) to Ex. "D," Leathers Dep.

40.

**STATEMENT:**  Plaintiff objected to Staff's initial parking analysis.  Leathers Decl. ¶ 11.

**RESPONSE:**  Undisputed.

41.

**STATEMENT:**  Plaintiff submitted a parking study of its Nashville, Tenn., and Dunwoody, Ga., facilities conducted by Kimley-Horn in June 2009, and supplemented the study in July 2009 with an analysis of a third facility in Buffalo, NY.  Leathers Decl. ¶ 12.

**RESPONSE:**  Undisputed.

42.

**STATEMENT:** Staff revised its parking recommendation from 148 spaces to 130 spaces. Id.

**RESPONSE:**  Undisputed that Staff revised its parking recommendation from 148 spaces to 130 spaces.  Doc. 43-3, Leathers Decl. ¶ 14.  However, the Church vigorously disputes

that 130 spaces are required under 18.2.1 of the Zoning Ordinance and Defendants provide no testimony, basis or authority as to how it came to recommend the 130 figure even came from the Ordinance.

43.

**STATEMENT**: Furthermore, generously restriping the parking spaces in the surface lot allowed Plaintiff to achieve 111 parking spaces, utilizing the easement, as opposed to 81. Leathers Decl. ¶ 15.

**RESPONSE**: Undisputed that the restriping and redevelopment of the parking spaces in the surface lot allowed the Church to achieve the 111 parking spaces. Disputed that the restriping was "generously" done. The proposed restriping was in accordance with the Zoning Ordinance Section 18.4.1 and was proposed at great expense to Plaintiff in order to address the unfounded perception that there was a need for additional parking.

[STATEMENT OF FACT NOS. 44 THROUGH 46 OMITTED]

47.

**STATEMENT**: Scientology does not have any beliefs, religious mandates with respect to parking at its facilities. Wright Dep. p. 54, 72-73.

**RESPONSE:**  Undisputed.  LR 56.1 (3)(c) objection:  not material to any issue in this case.

Respectfully submitted,

DILLARD & GALLOWAY, LLC

By:  G. Douglas Dillard
Georgia Bar No. 221900
dougd@dandglaw.com
Andrea Cantrell Jones
Georgia Bar No. 398440
andrea@dandglaw.com
Lauren M. Hansford
Georgia Bar No. 497507
lhansford@dandglaw.com
Attorneys for Plaintiff
3500 Lenox Road, N.E., Suite 760
Atlanta, Georgia 30326
(404) 965-3680
(404) 965-3670 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS NOT IN DISPUTE** to the Clerk of Court using the CM/ECF system, which automatically sends an electronic mail notification of such filing to counsel of record who are CM/ECF participants, and mailed by United States Postal Service, first-class, mail, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants.  Counsel of record is:

> Laurel E. Henderson, Esquire
> HENDERSON & HUNDLEY, PC
> 160 Clairemont Avenue, Suite 430
> Decatur, Georgia 30030

This 31st day of January 2011.


> /s/ Andrea Cantrell Jones
> Georgia Bar No. 398440
> andrea@dandglaw.com