UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

```
CHURCH OF SCIENTOLOGY OF GEORGIA,  )
INC., a Georgia Corporation,       )
                                   )
         Plaintiff,                )
                                   )
v.                                 ) CIVIL ACTION
                                   ) FILE NO.: 1:10-cv-0082-CAP
CITY OF SANDY SPRINGS, GEORGIA,    )
et. al.                            )
                                   )
         Defendants.               )
```

**DEFENDANTS' MEMORANDUM OF LAW REPLYING TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COME NOW the City of Sandy Springs, Georgia, and its named elected officials, Defendants in the above-styled action, and pursuant to L.R. 56.1(A) and L.R. 7.1(C) file this their Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment.

**BRIEF OVERVIEW**

The decision in this case revolves around one issue – **parking**. At its core, Plaintiff's only claim is that Defendants cannot require it to provide adequate parking to accommodate its proposed expansion of the Subject Property. It insists that Defendants are required to apply a plainly inadequate and inapplicable parking standard ignoring the primary reasons why Scientologists visit Plaintiff's facility, that Plaintiff's facility will have 100 staff members on site at all times, that

1

Scientologists in Georgia "prefer to drive than walk," and that they have a demonstrated person to car ratio of 1:1. See Doc. 37-1 pp. 5-7 (describing the "core religious services of Scientology are 'Training' and 'Auditing'"); Doc. 39-1 p. 9; Doc. 42-2 pp. 21-22; Doc. 67-1 pp. 1-2; Doc 67-2 p. 1; Doc. 43-3, p. 5-6; Plaintiff's Response to Defendants' First Continuing Interrogatories at p. 5-6. Defying all logic and reason, Plaintiff maintains that **41** parking spaces are adequate to serve a 43,215 square foot facility purposefully located next to major highways and one of the busiest intersections in Atlanta so as "to be accessible by … local Scientologists and those coming from surrounding states." Doc. 67-1 pp. 1-2 (emphasis added); Doc 67-2 p. 1; Doc. 69 pp. 6, 10, 13. Defendants, however, are not required to accept Plaintiff's delusions.

Plaintiff's Response continues to ignore the specific facts of this case and relies on the same overgeneralizations, broad assumptions, and logical fallacies that plagued both its Complaint and Motion for Summary Judgment. Defendants Memorandum of Law Opposing Plaintiff's Motion for Summary Judgment adequately refutes the majority of Plaintiff's arguments and is incorporated by reference. Below Defendants specifically address the new theories introduced by Plaintiff in their Response.

**I. PLAINTIFF'S RELIGIOUS FREEDOM-BASED CLAIMS:**

**A. <u>Defendants' decisions did not discriminate against Plaintiff on the basis of religion.</u>**

In its Response Plaintiff re-crystallizes its discrimination argument under a new theory of "denominational preference." Doc. 69 pp. 2-6. Plaintiff's core argument, however, remains the same. Plaintiff still insists that Defendants discriminated against it on the basis of religion by refusing to calculate required parking using the "church" parking standard from Section 18.2.1. <u>Id.</u> at 6. This argument fails for several reasons.

First, nothing about Defendants decision was based on Plaintiff's religion, religious beliefs, or religious practices. Despite Plaintiff's assertions, there is absolutely no evidence to support even a veiled hostility towards Plaintiff's practice of Scientology in Sandy Springs. Defendants specifically authorized use of all of the existing 32,000 square feet of improved space on the Subject Property for the practice of Scientology. Had Plaintiff demonstrated that it could have provided adequate parking for its proposed expansion, the evidence indicates that it would have also approved Plaintiff's proposed expansion. Doc. 42-2. p. 26. The reality, however, was that Plaintiff could not make such a showing, and Defendants denied the proposed expansion for lack of adequate parking. Doc.

58 pp. 5-6, 9-10. The First Amendment and RLUIPA are not swords with which Plaintiff can fend off the even-handed application of neutral, generally applicable laws. <u>Church of Lukumi Babalu Aye, Inc v. City of Hialeah</u>, 508 U.S. 520, 531 (1993).

Parking is purely secular concern and the parking standards of Section 18.2.1 are neutral and generally applied to all applicants irrespective of religion. Doc. pp. 43-1, pp. 5, 11-12; Doc. 58, pp. 7-9, 22-24. The process for applying these standards does not vary from applicant to applicant. <u>Id.</u> In applying these standards to Plaintiff, Defendants determined that Plaintiff's operative use did not fairly fit within the definition of a church and the underlying assumptions of the "church" parking standard.[1] The "Church, Temple, and Other Place of Worship" parking standard under Section 18.2.1 assumes that the peak parking demand for a "church" facility correlates to the use of the facility's largest area for assembly. Doc. 43-3, pp. 3-4. A "church" is primarily an assembly-type use. <u>Id.</u> Plaintiff made it clear to Defendant that its use was different from that of a "traditional church" which focuses on group assembly for religious ceremonies. <u>Id.</u> 5-6.

Despite Plaintiff's after-the-fact attempts to cast itself as an assembly-type use, Plaintiff admitted early in the zoning

---

[1] Defendants do not deny that Scientology is a religion or that Plaintiff's use of the subject property is a religious use entitled to protection under the First Amendment and RLUIPA.

4

process that assembly in its 1,218 square foot sanctuary was not a primary driver of parking demand for its 43,215 square foot facility. Id.; see also Doc.37-1, pp. 5-7. Rather, the core religious services for which Scientologists visit Plaintiff's facility – Training and Auditing – are delivered in the nearly 22,000 square feet of office and classroom space, not the sanctuary. Id. Application of the "church" parking standard fails to account for the parking demand generated by the Plaintiff's use of its office and classroom space. Defendants' recognition of this fact in the calculation of required parking is not evidence of religious discrimination or veiled hostility towards Scientology; rather, it only shows Defendants' purely secular concern with ensuring the provision of adequate parking.

Plaintiff's argument mistakenly assumes that all religious uses are church uses. This is plainly not the case. Religions operate a variety of different types of facilities, ranging from places of worship to schools, daycares to boarding houses. See e.g. Doc. 41-11, pp. 4, 12; 41-6, pp. 4, 13; Doc. 41-13, pp. 2. Section 18.2.1 provides specific neutral parking standards for each of these uses that are based on unique assumptions about the peak parking demand generated by the nature of the use. See Zoning Ordinance § 18.2.1; Doc. 43-3, pp. 3-4. Defendants consistently apply these standards to all religious applicants. Id.; Doc. 41, pp. 15-19; Doc. 41-11, pp. 4, 12; 41-6, pp. 4, 13.

The mere fact that Defendants apply different parking standards to "non-church" religious uses than to "church" uses alone is not evidence of unfavorable treatment or religious discrimination. Midrash Sephardi Inc. v. Town of Surfside, 366 F.3d 1214, 1232-33 (11th Cir. 2004); see also Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1313 (11th Cir. 2006). Rather, it only shows that Defendants acknowledge that different uses generate different parking demands based on the operative nature of the use. See Id.

Plaintiff provides no evidence to support its claim that Defendants' parking standards are unequally applied or inherently favor or disfavor certain religions and/or religious practices. Plaintiff does not show that it has been treated differently from any similarly situated comparator. Id.; Doc. 58- pp. 10-16. In fact, the only similarly situated comparator identified by Plaintiff – Kadampa Meditation Center – was treated in precisely the same manner as Plaintiff with respect to parking. Doc. 41 pp. 8-14. Nothing – other than Plaintiff's own failure to satisfy Defendants' parking requirement – indicates that the parking standards applied to "non-church" uses artificially inflate required parking, impose parking burdens that are disproportionate to the anticipated use, or in any way have the effect of inhibiting "non-church" religious

6

uses. In fact, the evidence shows that "non-church" religious uses regularly satisfy the parking requirements imposed by Defendants. Id. The mere fact that Plaintiff failed to satisfy these requirements is not evidence of the broader disproportionate impact that it claims.

In the end, Defendants' refusal to treat Plaintiff like something that it is not is not "unfavorable" treatment. The "church" parking standard is only more "favorable" to Plaintiff because it is the wrong standard to apply to Plaintiff's use. The "church" standard ignores Plaintiff's most intensive uses and erroneously calculates parking based solely on the parking demand generated by 3% of the facility's total square footage. Defendants are not constitutionally required to apply a plainly inaccurate parking standard and ignore the realities of Plaintiff's use.

## II. PLAINTIFF'S REMAINING CLAIMS:

### A. Plaintiff's substantive due process claim fails as a matter of law.

Plaintiff's response fails to provide clear and convincing evidence demonstrating that it has suffered a significant detriment as a result of Defendant's rezoning decision. See Gradous v. Board of Commissioners of Richmond County, 256 Ga. 469, 471 (1986). Without any evidence, Plaintiff asserts that it has suffered a significant detriment because Defendants have

deprived it of the "full use of its property." The record indicates precisely the contrary.

To begin with, Plaintiff remains in possession of its property and is entitled to fully use it consistent with the current zoning. Defendants also specifically authorized Plaintiff's use of the Subject Property as a church. Plaintiff fails to provide any evidence that the existing zoning limitation precluding renovation of the basement is not consistent with the highest and best use of the property. Plaintiff's property appraisal indicates that the highest and best use of the property is for office use – which is permitted under the existing zoning. Doc. 64-3, p. 4. Additionally, any evidence of decline in the property's value is not a result of Defendant's decision to deny Plaintiff's proposed expansion. Rather, as Plaintiff's own property appraisal indicates, the decline in property value is a result of Plaintiff's own neglect and the general downturn in the economy. Doc. 64-3, pp. 4, 8.

Additionally, Plaintiff fails to establish that Defendants' rezoning decision was insubstantially related to the public health, safety and welfare. See Gradous, 256 Ga. at 471. Defendants have explained in detail the significant public safety, health, and welfare concerns underlying its decision to deny Plaintiff's request to eliminate a third of the existing on-site parking. Doc. 58 pp. 17-19. Plaintiff fails to provide

any evidence indicating that these concerns are unjustified or that Defendants decision is insubstantially related to these concerns. As such, its substantive due process claim must fail.

Respectfully submitted this 14th day of February, 2011.

/s/ Laurel E. Henderson
Laurel E. Henderson, Esq.
State Bar No. 346051

HENDERSON & HUNDLEY, P.C.
160 Clairemont Avenue
Suite 430
Decatur, Georgia 30030
Telephone (404) 378-7417
Facsimile (404) 378-7778

/s/ Wendell K. Willard
Wendell K. Willard, Esq.
Georgia Bar No. 760300

WILLARD & SULLIVAN
Two Ravinia Drive, Suite 1630
Atlanta, Ga 30346
Telephone (770) 481-7000
Facsimile (770) 481-7111
Email: wendell.willard@sandyspringsga.org

**<u>ADDENDUM TO MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Local Rule 7.1, N.D. Ga. the undersigned counsel certifies that the brief filed with the court was prepared with Courier New (12 point), one of the font and point selections approved by the Court in Local rule 5.1B, N.D. Ga.

This 14th day of February, 2011

/s/ Laurel E. Henderson
Laurel E. Henderson, Esq.
State Bar No. 346051

HENDERSON & HUNDLEY, P.C.
160 Clairemont Avenue
Suite 430
Decatur, Georgia 30030
Telephone (404) 378-7417
Facsimile (404) 378-7778

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| CHURCH OF SCIENTOLOGY OF GEORGIA, INC., a Georgia Corporation, )<br><br>Plaintiff, )<br><br>v. )<br><br>CITY OF SANDY SPRINGS, GEORGIA a Municipal Corporation of the State of Georgia; the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA, EVA GALAMBOS, in her Official Capacity as Mayor of the City of Sandy Springs, Georgia; and JOHN PAULSON, DIANNE FRIES, WILLIAM COPPEDGE COLLINS, JR, ASHLEY JENKINS, TIBERIO DeJULIO and KAREN MEINZEN McENERNY, Individually in Their Official Capacities as Members of the CITY COUNCIL of the CITY OF SANDY SPRINGS, GEORGIA )<br><br>Defendants. ) | ) CIVIL ACTION<br>) FILE NO.: 1:10-cv-0082-CAP |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2010 I electronically filed the foregoing **DEFENDANTS' MEMORANDUM OF LAW REPLYING TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

G. Douglas Dillard, Esq.
Andrea Cantrell Jones, Esq.
Lauren M. Hansford, Esq.

/s/ Laurel E. Henderson
Laurel E. Henderson, Esq.
State Bar No. 346051

HENDERSON & HUNDLEY, P.C.
160 Clairemont Avenue
Suite 430
Decatur, Georgia 30030
Telephone (404) 378-7417
Facsimile (404) 378-7778
Email: lhenderson@bellsouth.net